Grounds:

Issue #1: Whether The Defendant Was Entitled To Attend The Pre-Trial Conference, The Failure Of Which Was A Structural Defect In The Trial Process?

pp. 10-19

Issue #2: Whether The Court Was Required To Dismiss The Lesser Included Offense Of Aggravated Rape Because It Was An Element Of The Crime Of Aggravated Burglary?

pp. 19-24

Issue #3: Whether The Defendant Should Have Been Notified The Commonwealth Would Be Relieved Of Its Burden To Prove Every Element Of The Crimes Charged Beyond A Reasonable Doubt?

pp. 24-27

Issue #4: Whether The Loss Of Key Evidence In The Case by The Government Denied The Defendant Due Process On Direct Appeal And Collateral Review, Where Tests Would Prove His Innocence?

pp. 28-30

Issue #5: Whether The Identification Of The Defendant One-On-One With The Government Was Suggestive In Violation Of The 14th Amendment?

pp. 31-32

Issue #6: Whether The Defendant Was Denied An Alibi Instruction to The Jury, Where His Attorney Failed to Notify The Government Of The Defendant's Alibi Defense?

pp. 33

Issue #7: Whether The Government's Failure To Investigate The Crime Scene Of Other Perpetrators, Was The Defendant Denied Third-Party Defense?

pp. 34-35

Issue #8: Whether The Government Breached The Defendant's Motion In Limine To Exclude Inferences Of Prior Bad Acts Created A Miscarriage Of Justice In this Case?

pp. 35-37

Issue #9: Whether The Prosecutor Vouched For The Credibility Of the Victim In Violation Of The 6th And 14th Amendments to the U.S. Constitution?

pp. 37-39

Issue #10: Whether The Jury Instructions On Reasonable Coubt Were Erroneous As A Matter Of Law, Creating a Structural Defect In the Trial Process?

pp. 39-51

Issue #11: Whether The Defendant Was Denied The Effective Assistance Of Counsel At Trial And On Direct Appeal?

pp. 51-55

Issue #12: Whether The Defendant Agreed to An Improper Plea Agreement ON Indictments 84057 and 84058, That It Would Run Concurrent With The Previously Entered Sentence(s), It Now Requires Resentencing To The Maximum Of 20 Years?

pp. 55-57

Prior Proceedings On Direct Review:

Direct Appeal, March 6, 1992 by the Appeals Court, Fine, Jacobs & Laurence, JJ., who ruled on prior bad acts testimony only.

Prior Proceedings - Collateral:

April 16, 2002, Motion For Release From Unlawful Restraint - rule 30(a), Seeking to vacate his commitment as a sexually dangerous person (SDP), citing Redgate, Petitioner, 417 Mass. 799 (1994), as he was committed while sentencing was pending.

The defendant sought jail credits in November 2015, was denied, and appealed. Commonwealth v. Dutcher, No. 2-15-P-1724 is in the Appeals Court on a stay pending this motion.

## Legal Arguments

### Issue #1:

WHETHER THE DEFENDANT WAS ENTITLED TO ATTEND THE PRETRIAL CONFERENCE, THE FAILURE OF WHICH WAS A STRUCTURAL DEFECT IN THE TRIAL PROCESS?

According to the Official Record of the case, the PreTrial Conference was held July 6, 1987. The defendant was not notified by the Clerk of Court or his attorney there was a pretrial conference and was, therefore, absent. [Affidavit In Support Of Motion to Vacate, Set Aside, Or Correct Sentence, p.1, ¶ 2 ]

Mass.R.Crim.P. 11(a):

"The prosecuting attorney and counsel for the defendant shall[1] attend a pre-

1 The word "shall" is ordinarily interpreted as having a mandatory or imperative obligation. Hashimi v. Kalil, 388 Mass. 607, 609 (1983); Johnson v. Dist. Atty. For The N. Dist., 342 Mass. 212, 215 (1961)

> trial conference to consider such matters as will promote an expeditious disposition of the case. The defendant shall be available for attendance at the pretrial conference." [Emphasis added]

The defendant was not notified by the Clerk of Court via habeas corpus to the Plymouth House Of Correction or by his attorney there would be a pre-trial conference.

There were no discussions with the defendant whether at trial he would testify, what was his defense to the charges, as to whether there would be any stipulations, what discovery he would receive from the Commonwealth, etc.

The PreTrial Conference was a critical stage of the proceedings for which the defendant's presence was necessary, both actually, and to satisfy Due Process. Mass.R.Crim.P. 18(a)

The Constitutional right to be present at all critical stages of the criminal proceedings is a

fundamental right of each and every criminal defendant. A stage is a critical one if the "defendant's presence would contribute to the fairness of the procedure." Snyder v. Massachusetts, 291 U.S. 97, 107-108 (1934)

As the rule of law, the defendant himself has the Constitutional right to confront the prosecutor, and the Commonwealth's case, in the presence of his attorney, for issues of discovery, theories of the prosecution, pretrial motions and efficient memoranda, generally the right to raise any pretrial concerns which would affect the Commonwealth's prosecution of the charges and the defense thereof. Kentucky v. Stincer, 482 U.S. 730, 740-744 (1987)(the confrontation right does not turn on whether the stage was critical); Diaz v. United States, 223 U.S. 442, 454-455 (1912)

At any juncture in the criminal court proceedings, the defendant's presence has a relation to the opportunity to defend against the charges, using the all proofs doctrine of Article XII of the Massachusetts

Declaration Of Rights. See, Commonwealth v. Louraine, 390 Mass. 28, 34-38 (1983) The defendant must be there, his presence felt as an active participant. Snyder, 291 U.S. at 105-106.

The exclusion of the defendant from the pretrial conference is a structural defect on the process of prosecution for an alleged crime committed.

Standing Order 2-86 of the Superior Court Rules mandates that in all cases, the defendant shall be available for the pretrial conference and shall sign the pretrial conference report.

> "...the prosecuting attorney and defense counsel shall confer prior to the scheduled pretrial hearing in order to conference the case and prepare a written pretrial conference report. In accordance with Mass.R.Crim.P. 11(a) the defendant shall be available for attendance at the pretrial conference."
>
> [Emphasis added]

The Rules of Court have the force of law and may not be ignored by an individual judge. Empire Apts. Inc. v. Gray, 353 Mass. 604, 606 (1985)

The issue is one of procedural due process concerning the aspect of Superior Court Standing Order 2-86, to which the defendant has a liberty interest to be included in determining all proofs. Logan v. Zimmerman Brush Co., 455 U.S. 422, 437 (1982) The mandatory language in the Order has to protect the defendant, and not that he's "available" in some holding cell (somewhere in the Courthouse), but that under the Due Process Clause he is entitled to notice and hearing of all things pretrial conference-wise, Board of Regents v. Roth, 408 U.S. 564 (1972), of everything that takes place at the conference. No secrets allowed. Louraine, 390 Mass. 34-38.

The substance of Rule 11(a) and Rule 18(a) of the Mass. Rules of Criminal Procedure:

1. the agreed statement of the facts;
2. proposed stipulations of the parties;
3. list of names of prospective witnesses;
4. list of proposed exhibits;
5. statement of disputed legal issues;
6. list of pretrial motions;
7. whether the defendant is in custody;
8. whether an interpreter is needed;
9. estimated length of trial;

10. based on the automatic discovery under Rule 14(a), so the defendant himself may confront the prosecution's case to make an honest evaluation of the case against him;

11. whether the case can be disposed of by means of a plea agreement;

12. after a full discussion between the prosecutor, the defendant, and defense counsel, the pretrial conference report will then be signed by all parties.

Traditionally, Commonwealth's attorney(s) are taught to save a conviction at any cost, and would argue to this Court that the pretrial conference is not a critical stage of the proceedings, and the defendant, therefore, does not have a Due Process entitlement to attend the discussions. The District Attorney(s) would prefer to conduct pretrial conferences in secret, within the "good ol' boy" network of "just us lawyers." Like parents who are discussing imporant issues out of earshot of the child, "for his own protection."

The US Supreme Court would disagree with the District Attorney(s) in Snyder, ante, where it was

held the presence of the defendant is a condition of due process to the extent that a just and fair hearing would be thwarted by the defendant's absence.

Where Rule 18(a) "is patterned primarily upon Rule 3.180 of the Florida rules of Criminal Procedure and is a codification of accepted Massachusetts Practice:"

> "Under the Florida Rule a defendant's presence is commanded at certain specifically enumerated 'critical stages' of a criminal proceeding: arraignment, entry of plea, pretrial conference, all trial proceedings before the court, jury view, rendition of verdict, pronounsement of judgment and imposition of sentence."[Reporter's Notes]

What delineates the pretrial conference as a critical stage with substantive due process is Mass. R.Crim.P. 11(a). The defendant must be available for attendance at the pretrial conference, not be waiting in the wings. The rules of court have the force of law, and because of the substantive predicates in the Rules of Court, including Standing Orders, the defendant has a protected liberty interest in his attendance at the pretrial conference

which is protected by the Fourteenth Amendment and Article 12. He is not yet a convicted person. Meachum v. Fano, 427 U.S. 215, 224-225 (1976); Bell v. Wolfish, 441 U.S. 520, 539 (1979) This is not a civil proceeding where the attorneys for the parties may enter into stipulations outside the party's presence. Frett v. Government of Virgin Islands, 839 F.2d 968, 971-972 (3rd Cir. 1988) Here, in this criminal proceeding, it's the defendant's life and his liberty at stake.

The rule of law is this: A statute, rule, or regulation creates a liberty interest (entitlement) if it limits the discretion of the Commonwealth's Courts and public servants. Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 462 (1989)

The most common method of limiting discretion is to use "explicitly mandatory language in connection with requiring substantive predicates." See, Hewitt v. Helms, 459 U.S. 460, 472 (1983)

Mandatory language often means words like

"shall," "will," or "must." Board of Pardons v. Allen, 482 U.S. 369, 378 (1987)

There are no "escape clauses" in the Rules and Orders of the Superior Court which allow the Courts and the Commonwealth's attorneys to apply cerebral ignis fatuus. Joihner v. McEvers, 898 F.2d 569, 572 (7th Cir. 1990)("to the extent practicable" does not appear in Rules 11(a) and 18(a))

Here, because the structural defect affected the framework upon which the trial was built, if this Court looks to "prejudice" flowing from the structural defect, it would be a "speculative inquiry into what might have occurred in an alternative universe." United States v. Gonzalez-Lopez, 548 U.S. 140, 150 (2006)

Not allowing the defendant to be present at the pretrial conference is tantamount to not allowing defendant's counsel to attend a plea hearing. Van Patten v. Deppisch, 434 F.3d 1038 (7th Cir. 2006)(this is an obvious structural defect)

The failure to allow the defendant to attend the pretrial conference nullified the trial. See, for example, Sullivan v. Louisiana, 508 U.S. 275 (1993)[citing] that a "Cage error represents a structural defect that effectively nullifies the proceeding and is a fundamental fairness issue."

For this reason, this Court must vacate the defendant's convictions.

Issue #2:

WHETHER THE COURT WAS REQUIRED TO DISMISS THE LESSER INCLUDED OFFENSE OF AGGRAVATED RAPE BECAUSE IT WAS AN ELEMENT OF THE CRIME OF AGGRAVATED BURGLARY?

The Court, Hurd, J., gave no instructions to the jury on lesser included offenses. The defendant was charged with violations of G.L. c. 266 §14[2] Assault In A Dwelling (Burglary while armed); G.L. c. 265 §22(a), Aggravated Rape, and G.L. c. 265 §13A, Assault & Battery.

2 Amended by the Court to c. 266 §15 (Unarmed Burglary)

G.L. c. 266 §15: Burglary; unarmed

> "Whoever breaks and enters a dwelling house in the night time, with the intent mentioned in the preceding section, or, having entered with such intent, breaks such dwelling house in the night time, the offender not being armed, nor arming himself in such house, with a dangerous weapon, nor making an assault upon such person lawfully therein, shall be punished by imprisonment in the state prison for not more than twenty years and, if he shall have been previously convicted of any crime named in this or the preceding section, for not less than five years." [R.L. 1902, c. 208, §15]

Jury Instructions

Burglary - "I'll read from the statute, which is Chapter 266, section 14...-strike that- it's section 15; and not being armed nor arming himself in such house with a dangerous weapon shall be punished..." [TR: 2-94-95] "...disregard any reference to being unarmed or armed..." [Id.,] Burglary is the prime charge in this case.

G.L. c. 265 §22(a): Rape, generally;

(a) Whoever has sexual intercourse or unnatural sexual intercourse with a person, and compels such person to submit by threat of bodily injury and if either such sexual intercourse or unnatural sexual intercourse results in or is committed with acts resulting in serious bodily injury, or is committed by a joint enterprise, or is committed during the commission or attempted commission of an offense defined in section fifteen A, fifteen b, seventeen, nineteen or twenty-six of this chapter, section fourteen, fifteen, sixteen, seventeen or eighteen of chapter two hundred and sixty-six or section ten of chapter two hundred and sixty nine shall be punished by imprisonment in the state prison for life or for any term of years."

[R.L. 1902, c. 207, §22]

Here, both crimes, burglary and aggravated rape are elements of each other, and one of them must be dismissed as an underlying lesser included offense.

Where multiple punishments were prohibited, the proper approach of the trial Court was to submit the multiple charges to the jury and once guilty verdicts were returned on more than one, to dismiss the lesser included offense (here, aggravated rape) or either of them prior to the entry of judgment of conviction and sentencing on the primary crime of Burglary. Commonwealth v. Jones, 382 Mass. 387, 394-395 (1981); Rutledge v. United States, 517 U.S. 292, 301 (1996) (1 of 2 concurrent sentences vacated as lesser included offense)

Here, according to the statutes of the crimes charged, each crime requires the commission of a felony while in the process of committing the primary (overlying) felony. In this case the primary crime was Burglary, with the rape used to aggravate the burglary. Illinois v. Vitale, 447 U.S. 410, 420-21 (1980)(Case remanded to determine whether separate conviction for failure to reduce speed was lesser-included offense of involuntary manslaughter, and thus barred trial for the latter)

The fact that the Burglary contained as an element of the crime, the crime of rape, is determined by the statutory elements of the offenses. Carter v. United States, 530 U.S. 255, 257-261 (2000) (Whether offense is lesser-included offense determined by textual comparison of statutory elements because such test lends itself to certain and predictable outcomes)

Ruling on the test of whether each crime requires proff of an additional fact that the other does not, Morey v. Commonwealth, 108 Mass. 433, 434 (1871), the Supreme Judicial Court held in Jones, 382 Mass. at 395 that, "...we now conclude, however, that the protection against multiple punishments embodied in the Morey test for duplicitous convictions extends as well to the imposition of concurrent sentences for what amounts to the same offense."[citing] United States v. Buckley, 586 U.S. 498, 504-505 [n.3](1978)

Here, where both crimes are elements of each other, the question remains, of the two concurrent sentences, which is the lesser-included offense?

Had the Commonwealth charged the defendant with simple Rape under §22(b), which is a lesser-included offense, by statute of §22(a), and, instead of guilty-filing the assault under §13A, that would have been the lesser-included bound to be dismissed on concurrent sentencing. Now, the defendant has completed his 20-years sentence for Burglary and must be released.[3]

Issue #3:

WHETHER THE DEFENDANT SHOULD HAVE BEEN NOTIFIED THE COMMONWEALTH WOULD BE RELIEVED OF ITS BURDEN TO PROVE EVERY ELEMENT OF THE CRIMES CHARGED BEYOND A REASONABLE DOUBT?

The defendant's counsel, John Yunits, without the defendant's knowledge or approval, stipulated that CW's house was burglarized, she was assaulted and raped.

Because the defendant was not allowed to attend the PreTrial Conference, he had no knowledge of the

---

3 "...and I have defined that particular crime for you, and I won't repeat it because it was part really of the burglarization; [TR 2: 99]

stipulations to which he would not have agreed. [Affidavit In Support Of Motion To Vacate, Set Aside, or Correct Sentence, p. 1 ¶ 3 ]

The rule of law is that the Commonwealth in a criminal trial, has the burden of proof on each and every element of the crimes charged. In re Winship, 397 U.S. 358, 371 (1970)(Proof is beyond a reasonable doubt in a criminal case)

The Court, Hurd, J., instructed the jurors that "and the Commonwealth has the burden of proving beyond a reasonable doubt that the defendant was the person who committed the crime." [TR2: 85]

And, furthermore, "...the burden of proving the defendant guilty by proving all of the elements of the crime with which he is charged falls upon the shoulders of the Commonwealth. The burden never shifts to the defendant." [Tr2: 85]

Then, "the defendant has denied that he is guilty of these crimes charged in these indictments." [TR2: 86]

Finally, "...because I understand it's conceded that on the evening of February 19, 1987, or the early morning hours, the victim in this case (CW) was the victim of an aggravated rape, that this was done by burglarization of her home; and in the course of which, she was assaulted and battered. Those facts are conceded." (Emphasis added)[TR2: 89]

"And I'll now define these two elements and I'm going to do it rather briefly because it's conceded that a rape took place, and it was an aggravated one." [TR2: 101]

In Commonwealth v. Hill, 20 Mass. App. ct. 130 (1985) the Appeals Court held that a stipulation of facts "conclusive of guilt" requires a Court to conduct a colloquy with the defendant in order that any waiver of his 6th Amendment rights be officially preserved. Accord, Commonwealth v. Garrett, 26 Mass. App. Ct. 964 (1988)

The Commonwealth's obligation is to prove beyond a reasonable doubt every element of the crimes charged. Commonwealth v. Sepheus, 82 Mass. App. Ct.

765, 788 (2012) Here, the jury hears the term "conceded," without the proper voir dire of the defendant, and a jury instruction explaining this so-called concession, the burden was shifted to the defendant.

The defendant has the unmitigated Constitutional right to insist the Commonwealth prove each and every element beyond a reasonable doubt. Commonwealth v. Berry, 420 Mass. 95, 111 (1995); Commonwealth v. Valliere, 437 Mass. 366, 372 (2002)

This shortcut, to deprive the defendant of his Constitutional right to put the Commonwealth to the test of its burden, waived by counsel, cannot stand, as the Court, and the defense counsel may be in a hurry to try the case, and in that endeavor trample the defendant's right to a fair trial. Commonwealth v. Desert, 90 Mass. App. Ct. 1114 (2016)

For this reason, the conviction must be vacated and the concomitant guilty pleas which hung on a conviction must be vacated as well.

Issue #4:

WHETHER THE LOSS OF KEY EVIDENCE IN THE CASE BY THE GOVERNMENT DENIED THE DEFENDANT DUE PROCESS ON DIRECT APPEAL AND COLLATERAL REVIEW, WHERE TESTS WOULD PROVE HIS INNOCENCE?

(At 1:53 p.m. without jury)

The Court: Good afternoon. I just thought we'd better have a conference as it reflects to a missing exhibit here; the clothing in the case, which was Exhibit #4, I believe. We placed it in a plastic bag. It's missing now. It's gone. [TR2: 105-107]

CW, the victim in this case, testified she vomited on herself after the perpetrator ejaculated. [TR1: 49] The lost clothing were never tested in any way, shape, manner or form. [TR1: 75] The Commonwealth showed the clothes to the jury then lost the clothes. There would never be any tests.

At the time of the defendant's trial - the defendant wished ~~to introduce~~ forensic evidence that

the vomit of CW would contain a possible blood type different from his type. The Court would then determine whether any semen contained in the vomit, left by the perpetrator, could be scientifically tested by the Commonwealth as being present and then type it for similarity to the defendant. See, Frye v. United States, 54 App. DC 46, 293 F. 1013 (DC Cir. 1923); Commonwealth v. Fatalo, 346 Mass. 266, 269 (1963)

The Commonwealth did not test. Commonwealth v. Bowden, 379 Mass. 472 (1980) Based on defendant's counsel's stipulations he would fail to request/ initiate testing on CW's clothing, which for all intents and purposes would prove the defendant's innocence or that he was likely the perpetrator. This inaction by trial counsel was manifestly unreasonable. Commonwealth v. Conley, 43 Mass. App. Ct. 385, 391 (1997)(Calling action 'tactic' does not insulate it from scrutiny in the ineffectiveness of counsel); Commonwealth v. Olszewski, 401 Mass. 749 (1988)

In 2012, the Legislature enacted G.L. c. 278A, "An act providing access to forensic and scientific analysis"(act), See. St. 2012, c. 38. The enactment which occurred in the wake of national recognition that "DNA testing has an unparalleled ability both to exonerate the wrongly convicted and to identify the guilty," District Attorney's Office for the Third Judicial Dist. v. Osborne, 557 U.S. 52, 55 (2009), would permit access to forensic tests on CW's clothing, even today, except the government has lost the evidence.

The defendant is factually innocent of the three charges for which he was tried. [Affidavit In Support Of Motion to Vacate, Set Aside, or Correct Sentence, p. 47 ¶ 17 ], but all that is necessary would be a preponderance of the evidence, Commonwealth v. Evans, 439 Mass. 184, 203 (2003) [quoting] Commonwealth v. Grace, 397 Mass. 303, 306 (1986)(new trial granted upon determination of "substantial risk that the jury would have reached a different conclusion.")

Because the Commonwealth has lost the clothing to be tested, the Court must vacate the conviction.

Issue #5:

WHETHER THE IDENTIFICATION OF THE DEFENDANT ONE-ON-ONE WITH THE GOVERNMENT WAS SUGGESTIVE IN VIOLATION OF THE 14TH AMENDMENT?

The police detective testifed he came to the victim's home with a photo array of eight photographs, one of which was the defendant. CW testified she picked the defendant's photo from the detective's array. There were only two people at this "picking procedure," the detective and CW. That's a problem. Commonwealth v. Rodriguez, 378 Mass. 296 (1979)

This was not a question for the defense counsel on cross-examination, Commonwealth v. Jones,362 Mass. 497, 500 (1972), but it should have been attacked as improper in front of the jury. This procedure (one-on-one) is the definition of the art of suggestiveness.

Because the defendant was informed of the identification's suggestiveness does not exonerate the failure to meet the basic standards of fairness.

There should have been a pretrial voir dire anent the circumstances surrounding this identification. Commonwealth v. Dougan, 377 Mass. 303 (1979) No one ever asked anyone of police procedures surrounding the identification of a suspect in a crime, i.e., whether there is always more than just one officer present for this identification, etc.,

Based on this suggestiveness of the one-on-one photo array identification session, where it was so easy to just tell CW this is the guy and no one will ever know what happened, is just too loose to satisfy due process. Commonwealth v. Tanso, 411 Mass. 640 (1992)

Where CW identified a similar-looking young man who turned out to not be the perpetrator, and since the perpetrator spoke to CW in the process of committing the crimes, a voiceprint identification was more than appropriate. Commonwealth v. Lykus, 367 Mass. 191 (1975) The defendant was entitled to the all proofs doctrine of Article 12. Commonwealth v. Louraine, 390 Mass. at 34-38.

Issue #6:

WHETHER THE DEFENDANT WAS DENIED AN ALIBI INSTRUCTION TO THE JURY WHERE HIS ATTORNEY FAILED TO NOTIFY THE GOVERNMENT OF THE DEFENDANT'S ALIBI DEFENSE?

The defendant testified under oath he was at his brother's house at the time of the crime. Commonwealth v. Berth, 385 Mass. 784 (1982)

John Yunits, defense counsel, not only did not notify the prosecutor of the defendant's alibi, he did not request any instruction on the issue of an alibi. Commonwealth v. Aviles, 31 Mass. App. Ct. 244 (1991) See, Mass.R.Crim.P. 11 (Pretrial conference discussion to include "nature of defense," including alibi) Mass.R.Crim.P. 14(b)(1) (On DA's motion, Judge may require alibi notice (time, date, place & witness, etc.,)). DA must give notice of any rebuttal witness(es).

The fact that Mr. Yunits did not produce the defendant's brother to testify that the defendant was at his house on February 19, 1987 would make the jury disbelieve the defendant's testimony. Commonwealth v. Fredette, 396 Mass. 455, 466 (1986)

Issue #7:

WHETHER THE GOVERNMENT'S FAILURE TO INVESTIGATE THE CRIME SCENE OF OTHER PERPETRATORS, WAS THE DEFENDANT DENIED THIRD-PARTY DEFENSE?

At the victim's home, no forensic investigation was performed by the police to ascertain fingerprints, fluids, footprints outside, or any epitheals on the victim or her clothing. This failure required an instruction to the jury which the Court refused to give it.

There certainly was probable cause to investigate the crime scene at CW's home. Commonwealth v. Jackson, 23 Mass. App. Ct. 975 (1987) This failure goes to the government's credibility on all aspects of the crime regarding pre-conceived notions, suggestive identification, other crimes in the area, etc. Commonwealth v. Flanagan, 20 Mass. App. Ct. 472 (1985)

This begs the question of whether a jury instruction on the police's failure to investigate could infer reasonable doubt. Commonwealth v. Reid,

29 Mass. App. Ct. 537 (1985) Article 12 of the Massachusetts Declaration Of Rights gives the defendant to present a third-party defense based on the police's failure to conduct a forensic investigation. Commonwealth v. Rosa, 422 Mass. 18, 22 (1996)(where the evidence of non-investigation is of substantial probative value, and will not tend to prejudice or confuse, all doubt must be resolved in favor of giving the instruction)

Issue #8:

WHETHER THE GOVERNMENT BREACHED THE DEFENDANT'S MOTION IN LIMINE TO EXCLUDE INFERENCES OF PRIOR BAD ACTS CREATED A MISCARRIAGE OF JUSTICE IN THIS CASE?

The defendant's attorney, John Xunits, did not file a motion in limine to exclude prior bad acts, except at the charge conference pre-trial.

Witness Sharon Chace, the alleged victim in a pending assault case charged against the defendant, testified that she hated the defendant "for good reason," an inference that he previously had

committed a crime against her. [TR2: 7]

Inferences

The witness's hate for the defendant in a rape case could only lead to an inference of prior bad acts. In Commonwealth v. Dinkins, 440 Mass. 715, 720-721 [n.8] (2004)(the jury may make an inference on an inference here to come to the conclusion of guilt or innocence) the Court held except each inference must be a reasonable and logical conclusion from the prior inference.

Here, under the Prior Bad Acts Doctrine, Mass. G. Evid. 404(b), Sharon Chace's testimony was inadmissible as it was not offered as proof of motive, opportunity, intent, preparation, plan, knowledge, nature of relationship, or absence of mistake or accident. Commonwealth v. Julien, 59 Mass. App. Ct. 679, 686-687 (2003)

For identity purposes, if Chace had simply testified she saw the defendant on March 25, 1987 and described what she saw~~, her purpose for her~~



testimony could only have been speculative; but when, on cross-examination, she stated she hated the defendant for sound reason, she pushed hard at the PBA doctrine. Commonwealth v. Bonds, 445 Mass. 821, 824 (2006)(probative value of Chace's testimony substantially outweighed by its prejudicial effect) No limiting instruction could have saved this violation, Commonwealth v. Gollman, 51 Mass. App. Ct. 839, 845 (2001), and it was elicited by the defendant's counsel. Ineffective?

Issue #9:

WHETHER THE PROSECUTOR VOUCHED FOR THE CREDIBILITY OF THE VICTIM IN VIOLATION OF THE 6TH AND 14TH AMENDMENTS TO THE U.S. CONSTITUTION?

"...think about that encounter with this man. (CW) was not an innocent bystander. This was not a neutral setting. There are circumstances in which people can look you in the face for an hour, and if you ask them five minutes later what you look like, they couldn't tell because they have no reason to. This was a

"very unique situation. (CW) had every reason to remember what happened to her and what the person looked like." [TR2: 63-64]

"So the real question is is he the guy who did it? CW says yes, he is. Why should you believe her? What is it about her testimony that would lead you to believe in your minds and in your hearts that he, John Dutcher, is the man who committed these crimes?" [TR2: 65]

"[W]e put (CW) up on the stand, and she identified him in the courtroom. She hasn't seen him since the night of February 19th 1987."(Except for the one-on-one photo array, but the prosecutor may have meant "in person.") "Yet, she got up there; and when I asked her do you see that man in here, she pointed to him. She pointed to him directly, without any reservations, without any wavering; and despite cross-examination she wasn't shaken." [TR2: 70-71] This is vouching for the witness.

The prosecutor, one Murray, is advancing his personal opinion as to the truthfulness, toughness,

and perseverance of the complaining witness, in violation of Supreme Judicial Court Rule 3:07, 3.8, 8.4; Commonwealth v. Kozec, 399 Mass. 514 (1987) the cumulative effect of the previously listed transcription quotes of Mr. Murray's blatant vouching should cause this Court to vacate the conviction. Commonwealth v. DeMars, 42 Mass. App. 788 (1997); S.C., 426 Mass. 1008 (1998)

See Commonwealth v. Villalobos, 7 Mass. App. Ct. 905 (1979)(DA's improper suggested personal knowledge of facts - here it was Murray's personal opinion of what was in his witness's mind. Commonwealth v. Walker, 442 Mass. 185, 197-199 (2004)(Personal opinion cannot substantiate CW's mental character)

Issue #10:

WHETHER THE JURY INSTRUCTIONS ON REASONABLE DOUBT WERE ERRONEOUS AS A MATTER OF LAW, CREATING A STRUCTURAL DEFECT IN THE TRIAL PROCESS?

> "[W]hat is a reasonable doubt? The term is often used and probably pretty well understood, but not easily defined.

> "It is not mere possible doubt, because everything relating to human affairs and depending on moral evidence is open to some possible or imaginary doubt. Reasonable doubt is that state of the case when, after the entire comparison and consideration of all of the evidence, the minds of the jurors are left in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge." [TR2: 87-88]

> "...but the evidence must establish the truth of the fact to a reasonable and moral certainty--and I insert with my hands in the air, in parenthesis I add not to an absolute, not to a mathematical certainty such as you can get when you add two and two for four--but to a certainty that convinces and directs the understanding and satisfies the reason and judgment of those who are bound to act conscientiously upon it." [Id.,]

The Massachusetts Appeals Court held the phrase "reasonable and moral certainty" to be constitutionally infirmed. Commonwealth v. Viera, 42 Mass. App. Ct. 916 (1997)

The Supreme Court, in Victor v. Nebraska, 511 U.S. 1, 14 (1994), O'Connor, J., held that "moral certainty" did not render Commonwealth v. Webster, 59 Mass. 295, 320 (1850) instructions on reasonable doubt to be unconstitutional.

Victor's progeny may have been Cage v. Louisiana, 498 U.S. 39 (1990)(Per Curiam) when the Court found the phrasing below to be unconstitutional:

> "It must be such doubt as would give rise to a grave uncertainty..."
>
> "It is an actual substantial doubt... What is required is not an absolute or mathematical certainty, but a moral certainty." Cage, 498 U.S. at 40.

In Hopt v. Utah, 120 U.S. 430 (1887), which was a capital death penalty case, the Court, Field, J., upon the Court's decision of error #3, where the lower Court charged the jurors:

> "The Court further charges you that a reasonabld doubt is a doubt based on reason, and which is reasonable in view of all the evidence..."

Justice Field held the Webster instruction to be infirmed:

> "...the difficulty with this instruction is that the words 'to a reasonable and moral certainty' add nothing to the words 'beyond a reasonable doubt,' or may require explanation as much as the other."

At the state level, there appears to be only the one direct challenge to the infirmed instruction: Commonwealth v. Byers, 62 Mass. App. Ct. 148 (2004)

In that case, the Court removed the word "moral" from the phrase "reasonable and moral certainty," used in Commonwealth v. Latimore, 423 Mass. 129, 139 [n.9] (1996)

In denying Byers relief, and citing Victor v. Nebraska, the Appeals Court held that the instruction "read as a whole," did not offend the Constitution. The Appeals Courts' moral turpitude notwithstanding, that decision did not comport with Viera, which was the Appeals Court's decision. No other Court had the judicial mettle to affirm the Rule of Law established by the Supreme Court.

On the Federal jurisdiction, Simpson v. Matesanz, 29 F.Supp. 2d 11 (D. Mass. 1998) was granted the great Writ on the jury instruction's infirmity, but the First Circuit Court of Appeals choked, 175 F.3d 200 (1999), another listless Court which undermined the Supreme Court's Rule Of Law.

Under Federal Circuit Court law in a more knowledgeable circuit, a similar holding on U.S. v. Indorato, 628 F.2d 711 (2nd Cir. 1980) that the interchangeable use of the phrases "morally certain" and "reasonable certain" was of dubious value, only the Court did not settle the controversy surrounding the use of "reasonable" certainty.

This decision supports the defendant's claim. Coupled with Victor, the state Superior Court may address and settle the controversy whether the instruction created a structural defect in the trial, the remedy for which is to vacate the conviction. Arizona v. Fulminante, 499 U.S. 279 (1991)

In Victor, the Supreme Court granted certiorari to two State cases, Victor v. Nebraska, 92-8894, and Sandoval v. California, 92-9049, issuing combined opinions on the reasonable doubt instructions.

The defendant here is concerned primarily with Sandoval's holding in which Justice O'Connor found "moral certainty" to be constitutionally correct, an implication that "reasonable certainty was not constitutionally correct. Victor, 511 U.S. at 15.

The Supreme Court was not presented any error on the "reasonable certainty" of Sandoval and/or Webster, since California only adopted the"bulk of the Webster instruction as a statutory definition of reasonable doubt." Cal. Penal Code Ann. §1096

Where Sandoval did not challenge the act of equating moral certainty with reasonable certainty the question is open for judicial dispute.

In Massachusetts, Commonwealth v. Costley, 118 Mass. 1, 24 (1875) it was held by the Court:

> "[P]roof 'beyond a reasonable doubt' is proof 'to a moral certainty' as distinguished from an absolute certainty. As applied to a judicial trial for crime, the two phrases are synonymous and equivalent..."

Victor, 511 U.S. at 12; Costley, 118 Mass. at 24; Wilson v. United States, 232 U.S. 563, 570 (1914); Miles v. United States, 103 U.S. 304, 309 (1881)

All of the above, to a facial challenge to the term "moral evidence" in the same instruction as "moral certainty." Aside from the moral evidence issue it was "moral certainty" which passed constitutional muster. Wilson, 232 U.S. at 570; Miles 103 U.S. at 309.

"Reasonable certainty," according to Victor, and cases cited therein, does not pass muster.

> "It is such doubt as will not permit you, after full, fair, and impartial consideration of all the evidence, to have an abiding conviction to a moral certainty, of the guilt of the accused."

Victor, 511 U.S. at 18.

It is not to have an abiding conviction to a "reasonable certainty," as in Victor "a juror morally certain of a fact would not hesitate to rely on it."

This Court, when reviewing this particular jury instruction [TR2: 87-88] on reasonable doubt it may be necessary to give the words in the instruction their common and ordinary meaning. It is intolerable fo the jury instruction merely be sentient to an interpretation that appears technically correct. The imporant question is that, where there is a reasonable likelihood the jury was misled or confused by the terms in the instruction, they applied it to the detriment of the defendant's constitutional rights. Boyde v. California, 494 U.S. 370, 380 (1990)

Any jury instruction defining reasonable doubt which suggests an improperly high degree of doubt for acquittal, or, as is the case here, an improperly low degree of certainty for conviction, offends the Due Process Clause of the Fourteenth Amendment.

The state Court, including this Court and undoubtedly the Supreme Judicial Court has fear shown by its motive to eschew reversal based on there may be multiple repercussions from other convictions (riding the band wagon of sound judicial rulings) that the "reasonable certainty" is a lesser, watered-down version, of "moral certainty" cannot be ruminated by the Court in Washington which unequivocably approved the higher proof of "moral certainty" in Victor.

See, Melendez-Diaz v. Massachusetts, 129 S.Ct. 2527, 2540 (2009)(Sky will not fall after reversal); Smith v. Massachusetts, 543 U.S. 462, 467 (2005). (There will be retrials, etc.)

According to Victor, there can be a reasonable doubt to preclude conviction, but the willingness to convict cannot be based on a certainty that is only "reasonable."

The term "reasonable certainty" is used throughout the civil litigation world. Assume the public-

(potential) jurors know this. Examples of this premiss are as follows:

First Nationwide Bank v. United States, 431 F.3d 1342 (2005)(Restatement (Second) Of Contracts, §352 - "Damages are not recoverable for loss beyond an amount that the evicence permits to be established with "reasonable certainty")

Carey v. Planning Board of Revere, 335 Mass. 740 (1957)(Form is not important, but notice "must convey with 'reasonable certainty' information needed to survive statutory purpose.")

Sullivan v. City of Augusta, 511 F.3d 16 (1st Cir. 2007)(the police chief shall grant a permit to sponsor, promote, or conduct a mass outdoor gathering to be attended by two hundred (200) or more persons upon written application. Therefore, unless it appears to the police chief with "reasonable certainty" that such gathering will unreasonably endanger the public health or public safety. ME Code §§3-117 (1991))

Another example of the lesser burden is found in United States v. King, U.S. Dist. LEXIS 21530 (1999) [citing] Russell v. United States, 369 U.S. 749, 756-766 (1962)("Further, an indictment need only track the language of the statute, and, if necessary, to apprise the defendant of the nature of the accusation against him with "reasonable certainty" state the time and place of the alleged offense in approximate terms.")

United States v. Crowley, 79 F.Supp. 2d 138 (ED NY 1999); United States v. Snype, 441 F.3d 119 (2005); Kunz v. New York, 340 U.S. 290 (1957) (a "reasonable certainty" of disorder in a freedom of speech case)

In the time span of 30 years, emanating from United States v. McLennan, 672 F.2d 239 (1982)("We agree that the words 'reasonable certainty' as used here were not apt in the explanation of the concept of reasonable doubt") no Court has had the judicial fortitude to apply the truth to this instruction on

reasonable doubt, that it is infirmed, that it is unconstitutional, and is a structural defect in the trial process.

Cf. Commonwealth v. Watkins, 433 Mass. 539 (2001) where the Court held that "moral certainty" was proper - but no comment on the phrase "reasonable certainty," with Gaines v. Kelly, 202 F.3d 598 (1991) where the Court held "morally and reasonably certain" phrases warranted issuing the writ of Habeas Corpus.

The juror who may only be "reasonably certain" of a fact proven in evidence may convict on a lesser standard than the abiding conviction necessary. As Justice Blackmun pointed out in the dissent, there may have been both a higher degree of doubt and an understated degree of certainty. Victor, 511 U.S. at 38.

A constitutionally-deficient reasonable doubt instruction is a structural defect which defies harmless error. United States v. Edmonds, 80 F.3d

810 [n.18] (3rd Cir. 1995); Commonwealth v. Pinckney, 419 Mass. 341, 342 (1995) Based on the instructions to the jury on reasonable doubt, the defendant could not have had a fair trial and his conviction must be vacated.

Issue #11:

WHETHER THE DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL AND ON DIRECT APPEAL?

From the very beginning of this trial the defendant was excluded from all thoughts, acts, deeds of the attorney, John Yunits. For example, the defendant was excluded by his attorney from attendance at the PreTrial Conference. [Affidavit In Support Of Motion To Vacate, Set Aside, Or Correct Sentence, p.1 ¶2 ]

His attorney, without the defendant's knowledge, stipulated to the Commonwealth having met its burden of proof that aggravated Burglary and aggravated Rape and assault & battery actually occurred and were crimes committed by the defendant, except the issue of identification.

And yet he offered little advocacy on the issue of identification. There was an attempt to suppress the composite drawing from the IdentiKit and an In-Court identification, but not to the suggestiveness of the one-on-one meeting of the CW and detective LeGarde.

Mr. Yunits claimed, based on his personal knowledge that "the photographic array was impermissibly suggestive and unreliable." [Motion To Suppress, Record Appendix 25 ¶4][Affidavit, Record Appendix 26 ¶c] The motion was denied by the Court, Hurd, J., but there was no interlocutory appeal of this decision and the one-on-one suggestive identification went by the wayside based on Mr. Yunits flagrant ineffectiveness, as it would appear without the proper investigation into police protocols on the issue of identification, re: photo arrays, Yunits was just "going through the motions."

See, G.L. c. 278 §28E (Application for an appeal from a decision, order or judgment of the

Superior Court determining a motion to suppress evidence prior to trial may be filed in the Supreme Judicial Court by a defendant...) See also, Mass.R.Crim.P. 15(a)(2); Commonwealth v. Boswell, 374 Mass. 263, 267 (1978)(Commonwealth would have lost the right to present identification evidence) The time limit was 10 days. (St. 1967 c. 898 §1)

The defendant argues his attorney(s) was/were ineffective pursuant to the Sixth Amendment right to counsel. Strickland v. Washington, 466 U.S. 668, 687 (1984) The question here is whether the defendant suffered prejudice from counsels' dreary performances?

Rather than do all the work it took to fight the charges, a reasonable person could conclude Mr. Yunits was unfamiliar with his client's case, how to investigate it, how to hold the government's feet to the fire of exculpatory evidence, and, in fact, what was his client's defense? Adams v. U.S. ex. rel McCann, 317 U.S. 269, 275-276 (1942)

Yunits did not understand that, according to the indictments, each of the crimes charged were lesser-included offenses of the other, based on the elements of the crimes, Price v. Georgia, 398 U.S. 323, 331 (1970)(Because the Court did not instruct on lesser-included offenses, or dismiss the underlying felony as a lesser-included offense, it cannot be determined which actually was the lesser-included offense.) See, Commonwealth v. Saferian, 366 Mass. 89, 94 (1974)

It is obvious Mr. Yunits did not believe as his client knows, that he is actually innocent of the crimes. The more the case has gone on, over the years, the harder it is for the defendant to prove his innocence. Schlup v. Delo, 513 U.S. 298, 321 (1995)

Turning to the issue of waiver, the defendant's direct appeal was conducted by Richard Shea, who failed in a serious manner to raise all the issues, and weakly raised ineffective assistance on the cross-examination of Sharon Chace, and Mr.

Ynits "sandbagged" his client by eliciting prior bad act evidence on his cross-examination of Ms. Chace, who, after she told the jurors she hated the defendant for good reason, the jurors found the defendant guilty on that inference alone.

The problem with Mr. Shea was, it is the only issue raised. This was not fair to the defendant, as is seen herein, there were many issues of both trial errors and structural defects in the trial process.

Issue #12:

WHETHER THE DEFENDANT AGREED TO AN IMPROPER PLEA AGREEMENT ON INDICTMENTS 84057 and 84058, THAT THEY WOULD RUN CONCURRENT WITH THE PREVIOUSLY ENTERED SENTENCES, IT NOW REQUIRES RESENTENCING TO THE MAXIMUM OF 20 YEARS?

This issue is "joined at the hip" with Issue #2 on the lesser-included offense of aggravated rape's mandatory dismissal, where it was an element of the crime of aggravated burglary, the primary charge of unarmed burglary carrying only 20 years maximum sentence, which the defendant has now "wrapped up."

In Bousley v. United States, 523 U.S. 614 (1998)? Bousley plead guilty to drug possession with intent to distribute and also to "using" a firearm "during and in relation to a drug trafficking crime" in violation of 18 U.S.C. §924(c)(1). On appeal, he did not challenge the plea's validity, but later sought habeas relief on the ground that his plea lacked a factual basis; the district court dismissed the petition. While his appeal was pending, the Supreme Court held in Bailey v. United States, 516 U.S. 137 (1995), that a conviction for using a firearm under §924(c)(1) requires proof of "active employment of the firearm." The Court of appeals held Bousley could not obtain relief based on Bailey, but the Supreme Court concluded this was not necessarily so. The Court concluded there was no nonretroactivity problem because Bailey had decided what the statute always meant, and that Bousley could prevail on habeas regarding an issue not previously raised if on remand he showed he was actually innocent.

Here, the defendant's guilty plea to the indictments ## 84057 and 84058 were unintelligible because the defendant was misinformed as to the lesser-included offense, which could only apply to the charge of rape because the charge of assault and battery had been guilty filed.

It is clear that all parties did not understand the ramifications of the mandatory dismissal of the underlying lesser-included offense.

For the reasons stated above, the defendant's guilty pleas to ## 84057 and 84058 must be vacated.

WHEREFORE, because the defendant has made a credible showing of his innocence, coupled with trial errors and structural defects, he must be afforded relief.

March 3, 2017

Respectfully submitted,

John E. Dutcher

John E. Dutcher, Pro Se
Box 43, Norfolk, MA 02056

AO 241 (Rev. 09/17)

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief: ORDER THE PETITIONER BE GIVEN A NEW TRIAL

or any other relief to which petitioner may be entitled.

N/A
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on DEC, 14, 2019 (month, date, year).

Executed (signed) on DEC 13, 2019 (date).

John E. Dutcher
Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

COMMONWEALTH OF MASSACHUSETTS

SUPREME JUDICIAL COURT

PLYMOUTH ss. S.J.C. NO. FAR

---

COMMONWEALTH
APPELLEE

V.

JOHN E. DUTCHER
DEFENDANT/APPELLANT

||||||||||||||||||||||||||||||||||||||||||||

ON APPEAL FROM A JUDGMENT
OF THE SUPERIOR COURT

---

# DEFENDANT/APPELLANT JOHN E. DUTCHER'S APPLICATION FOR LEAVE TO OBTAIN FURTHER APPELLATE REVIEW

---

JOHN E. DUTCHER, PRO: SE;
2 Clark Street
Norfolk, MA. 02056

Now comes John E. Dutcher and applies for leave to obtain further appellate review of the Appeals Courts decision affirming the denial for relief on his Rule 61A Motion to Vacate, Set Aside or Correct Sentence.

PRIOR PROCEEDINGS

Defendant filed his motion along with an affidavit describing the issues in the Superior Court,on March 3, 2017. This Motion was denied on February 8, 2018. The Appeals Court Affirmed on August 30, 2019.

STATEMENT OF FACTS

The memorandum opinion of the Appeals court adequatly states the facts relevant to this application for further appellate review.

ISSUES PRESENT FOR FURTHER APPELLATE REVIEW

Wether the Judges amendment of the indictment and the courts refusal to address the issue deprived the defendant of his Fifth (5) ammendment rights under the U.S. Constitution as well as the Massachusetts Constitution and thus condoning a substantial misscariage of justice.

Whether the courts continued blindfolded approach to Appelate counsels ineffectiveness on DIRECT APPEAL requires reversal under clearly established federal and state laws.

Did the court err in claiming that the defendants absence from a pre trial comference in which the court claims it was agreed that the crimes were conceeded did not violate his rights nor would it have changed the outcome of the trial.


Is it validation by the courts that the petitioner had issues that should have been raised on Direct Appelate Review but their contention now is they are waived. If so is this a concession that Appelate Counsel was therefor ineffective.

ARGUMENT

DID THE JUDGES AMENDMENT OF THE INDICTMENT ALONG
WITH THE COURTS REFUSAL TO ADRESS THE ISSUE DEPRIVE THE
DEFENDANT OF HIS FIFTH (5) AMENDMENT RIGHTS UNDER TH U.S.
CONSTITUTION AS WELL AS THE MASSACHUSETTS CONSTITUTION THUS
CONDONING A SUBSTANTIAL MISSCARIAGE OF JUSTICE

The judges refusal to give any weight to the defendants
affidavit, which she states is nothing but self serving is
actualy a miscariage of justice. An affidavit is a sworn, under
the pains and penalties of perjury lagally binding document.
This complete disregard of the defendants affidavit only served
the interests of the courts in their quest to uphold their
brothers conviction rather than the Constitutions Bill of Rights
and the law.

The judges put it quite succinctly in their brief that their
brothers conviction must have finality and protection from piece
meal litigation that would put a strain on consumer resources.
Our founding fathers had a different view, that the individual
must be protected from unlawful government prosecution or
imprisonment. That we are a country of laws and not of men.

In the defendants affidavit at #9, 10, 11 (R.App.II) the
defendant raised the claim, supported by trial transcripts
2-94,95 (R.App. III) that the judge on his own accord Amended
the indictment from ARMED BURGLARY G.L.sec.14 to UNARMED BURGLARY
G.Lc. 266 sec 15.but then allowed the jury to convict him of
Armed Burglary in violation of the law.

The judges charge to the jury to forget about being ARMED or
UN-ARMED broadend the scope of which the defendant could be
convicted. The judge, weather knowingly or not amended the
Indictment, reducing the charge from Armed Burglary to UNarmed
Burglary.

This amendment materialy altered the substantive offense
charged. see Com. v. Gallo 1 Mass.App. Ct. 636 (1974) such an
amendment is one of substance, not of form and is not permissable
A constructive amendment is per se a Fifth (5th) amendment
violation, see United States v McCourty 562 f.3d 458, 470 (2d Mc
Dermott 245 f.3d 133, 139 (2d cir 2001)

A constructive amendment occures either where, (1) An additional
element, sufficient for conviction, is added or (2) An element
essential to the crime charged is altered. Such as the case here

The jury instructions regarding the elements of offense -
to wit. " now Mr. forman ladies and gentlemen..... I'll deal
first with the crime of Burglary which is G.L.c.266 sec 14. It
provides whoever breaks and enters a dwelling house in the
night time with intent to commit a felony; or whoever, after
entering with such intent, breaks such house in the night time,
any person being then lawfully therein...STRIKE THAT, IT'S SEC.
15 AND NOT BEING ARMED NOR ARMING HIMSELF IN SUCH HOUSE WITH A
DANGEROUS WEAPON SHALL BE PUNISHED.

Those words "STRIKE THAT IT'S sec.15" changed the Grand Jury
Indictment from Armed Burglary to Un Armed Burglary. An amendment
of substance rather than form was impermissable regardless of
weather defendant was prejudiced therby... Comm. v. Miranda
59 Mass. App. Ct. 378, 796 Ne 2d 406.

Unlike the decision in U.S. v. McGilberry (2007 CA5 Miss) 480
f.3d 326 where the jury instructions narrowed the grounds for
conviction the jury instructions in the petitioners case expanded
the grounds for conviction by removing an essential element of
the Indicted offense of Armed Burglary. The portion as to being
armed or committing an assault therin in the sec 14 statue is a
distinct element that the judge removed.

ARGUMENT II

WEATHER THE COURTS BLINDFOLDED APPROACH
TO APPELLATE COUNSELS INEFFECTIVENESS
ON DIRECT APPEAL REQUIRES REVERSAL UNDER
CLEARLY ESTABLISHED FEDERAL AND STATE LAW

The U.S. Supreme Court has ruled in Davila v. Davis 137 S.Ct 2058, 2067, 198 L.Ed. 2d 603 (2017) that deficient performance is when counsel (appellate) raises a claim and ignoring a claim or claims that were plainly stronger than those presented on appeal.

Appellate counsel for the petitioner raised a single claim, that the solicited biased testimonyfrom the wit. was prejudicial and therefore counsel was ineffective. Appelate counsel failed to raise the more agregious trial errors such as the Judge amending the Indictment, the Judge conceeding the crimes to the jury or the failure of the D.A. to turn over exculpatory evidence that indicated the accussed was not sexually assaulted.

The courts have continuously ignored App. Counsels lack of due diligence by focusing on the issue he presented, steadfastly claiming he did the best with what he had argued.

The argument is not that App. counsel did not do a good job arguing that issue. The issue presented to the courts since the begining is that App. counsel was ineffective because he failed to raise other more significant issues. At a critical stage of the trial process his performance was ~~proficient~~- deficient and prejudiced the petitioner.

Prejudice may be pressumed under Cronic where (1) there is a complete denial of counsel at a critical stage of the trial (process) (2) Counsel entirely fails to subject the prosecution case to meaningfull adversarial TESTING. see also Bell v. Cone 535 U.S. 685, 152 L.Ed. 2d 914 (2002).

The courts in Massachusetts have used the petitioners lack of legal expertise to treat him as a legal ping pong ball, bouncing him back and forth saying that his claims are waived because he failed to raise them on direct appeal but wait, your App. counsel was not ineffective because he did a good job with the issue he did raise.

To hoist the court by its own petard, using their words they have so often said to me. Conspicuously missing from any of the denials for a New Trial Motion is a claim that the petitioners arguments in this regard are FRIVolous.

The petitioner was denied the effective assistance of Appellate counsel as pointed out in Davila supra as such he was prejudiced. Under these circumstances " Counsels failure to raise issues on appeal could only be classified as ineffective assistance. If there is a reasonable probability that inclusion of the issue(s) would have changed the result of the appeal". McFarland v. Yukins 356 F.3d 688, 700 (6th Cir. 2004)

If the courts are more interested in protecting the prosecutions conviction than upholding the principles of the Constitution; even in the face of adversity like our forefathers intended, then we are no better off as a people than the Russians, Chinese, N.Koreans or any other comunist country that opposses human rights. The mentality that we should use any means necessary to convict the man we believe is guilty, weather we do it Constitutionaly or not we'll call it Justice, after all isn't Justice Blind,

ARGUMENT III

WEATHER THE DENIAL OF HAVING THE DEFENDANT PRESENT AT A PRE-TRIAL CONFERENCE/HEARING IN WHICH HIS CONSTITUTIONAL RIGHTS WERE BEING CONCEEDED IS STRUCTURAL ERROR.

Massachusetts Court Rule 11 along with Superior Court Standing Order (S.O.) 2-86 demands at (2)(A) Conference Report, the filing of a conference report subscribed by the prosecutor and the counsel for the defense, and when necessaryto WAIVE A DEFENDANTS CONSTITUTIONAL RIGHTS(that an actual crime occured) or that the crimes were/are conceeded, or when the report shall contain stipulations as to material facts by the DEFENDANT it shall be filed with the clerk of the court......The conference report SHALL, meaning must, contain a statement of those matters upon which the parties have agreed.

The defendant submitted this very report as evidence to the court to substantiate his claim that he did not conceed the crimes, nor was he even present to be consulted., such action requires a colloquay between the defendant and the Judge. The lack of any written agreements by the parties is binding on the court and subject to pre-trial motions.

Conspicuously clear is the parroting of language between the D.A. and the judge. They dismiss the defendants claims simply stating that his only evidence is his self-serving affidavit. They convieniently chose to ignore the pre-trial conference report that shows there was no agreement to conceed the crimes by the parties.

The court chooses to align themselfs from the begining with the D.A. to find ways to uphold the conviction rather than administer justice, ignoring the facts and the evidence. The judge and the D.A. in their own self serving interest have failed to explain why it was not Structural Error when the D.A. and the court failed to follow R.11 (2)(A) and (a)(1)(c).

The defendant pled not guilty,that is his defense,which means the Commonwealth must prove that a crime was comitted and that the defendabt did it. Any defense upon which the defendant intends to rely upon are to be included in the report as topics to be discusseed. For these reasons the Supreme Court has held that these conferences are a critical stage of the trial process in which the defendant must be present to waive his rights.

For these reasons the defendants pre-trial conference report

and his self serving affidavit should be credited as factual evidence thereby rendering his claim of Structural Error valid.

The courts claim, that the defendants defense was one of mistaken identity is only accurate as to what defense counsel presented, however the defendant informed counsel he had an aliby which counsels investigator substantiated, and his other defense was that the lab report concluded that there was no indication of a sexual assault based upon scientific evidence.

The defendant asked the court for an evidentiary hearing in which this evidence could be presented, counsel could be supeoned and questioned under oath. In a case of this magnitude in which there was no physical evidence putting the defendant at the crime scene or any proof that the victim was sexualy assaulted the defendant should have been given an evidentiary hearing.

CONCLUSION

It is urged that further appellate review be granted.

Respectfully Submitted,

John E. Dutcher
2 Clark Street
Norfolk, Ma.02056

Dated October !, 2019

**Supreme Judicial Court for the Commonwealth of Massachusetts**
**John Adams Courthouse**
**One Pemberton Square, Suite 1400, Boston, Massachusetts 02108-1724**
**Telephone 617-557-1020, Fax 617-557-1145**

John E. Dutcher
MCI Norfolk (W46237)
2 Clark Street, P.O. Box 43
Norfolk, MA 02056

RE: Docket No. FAR-27115

**COMMONWEALTH**
**vs.**
**JOHN E. DUTCHER**

Plymouth Superior Court No. 8783CR84017
A.C. No. 2018-P-0308

**NOTICE OF DENIAL OF APPLICATION FOR FURTHER APPELLATE REVIEW**

Please take note that on November 14, 2019, the application for further appellate review was denied.

Francis V. Kenneally, Clerk

Dated: November 14, 2019

To: Johanna S. Black, A.D.A.
Carolyn A. Burbine, A.D.A.
John E. Dutcher
Plymouth Superior Court

Appeal of Martens Home Invasion

## STATEMENT OF THE CASE

Defendant John Dutcher was indicted in Plymouth Superior Court on May 27, 1987. The indictments charged burglary and assault in a dwelling house (No. 84019) and aggravated rape (No. 84018). Defendant moved to suppress in-court and out-of-court identifications as well as a composite created by police. The motion was denied on December 16, 1988. Defendant was tried before a jury on January 26 and January 27, 1989, and was found guilty of both charges. He was given concurrent sentences of 20-40 years at Cedar Junction. (App. - ). This appeal followed.

## STATEMENT OF FACTS

The complaining witness in the case was Tracy Martens. She testified that at the time of the assault she was separated and living with her two small children in Brockton. (Tr. 1-60). The assault occurred about 11:30 p.m. on February 18, 1987. Martens had put her children to bed and had dozed off on the parlor couch while watching television. (Tr. 1-67). She was awakened by a draft and looked up to see a man standing by the couch. (Tr. 1-69). The man

jumped on top of her, ripped her clothes, penetrated her with his hand, and forced her to have oral sex on him. (Tr. 1-73-75). She described the assailant, including a clean-shaven appearance on the night of the assault. (Tr. 1-71). She identified the defendant in the courtroom as her assailant. (Tr. 1-72). Martens testified further that on April 1, 1987, about six weeks after the assault, she viewed an array of photographs and identified one as depicting her assailant. It was a photograph of defendant, taken the day before, March 31, 1987. (Tr. 1-142; Exhibit 8). She described the March 31 photo as depicting him with a growth of beard: "the facial hair he had was like needing a shave." (Tr. 1-144).

The Commonwealth also produced a witness, Sharon Chace. She testified that, on March 25, 1987, she spent 45 minutes to one hour in Dutcher's presence. (Tr. 2-5-6). At that time "he looked like he hadn't shaved in a couple days." (Tr. 2-6). Comparing him on that occasion with the photograph taken on March 31, Chase testified that "He had less hair on his face". (Tr. 2-6). Defense counsel then conducted the following cross-examination:

> "Q. Ms. Chace, had you known John Dutcher before March 25th?
>
> A. No, I did not.

Q.   Would it be fair to say, Ms. Chace, you don't like Mr. Dutcher?

A.   There is good reason.

Q.   In fact, you hate Mr. Dutcher, don't you?

A.   You bet.

[Defense counsel]: No further questions."
(Tr. 2-7).

The Commonwealth's witnesses also included Detective LaGarde of the Brockton Police, who had constructed a composite, unsuccessfully had shown Martens hundreds of mug shots (none of which contained Dutcher's picture), and who ultimately had shown her an array of eight photographs, from which she selected Dutcher's picture.  (Tr. 1-128-136).

Defendant testified.  He denied that he was the assailant or that he ever had met Tracy Martens.  (Tr. 2-32).  Dutcher testified further that he had worn a beard continually, including in early 1987.  (Tr. 2-34).  Defendant produced three witnesses, a friend of his sister, his brother-in-law, and his sister.  Each testified that in February and March 1987, Dutcher wore a beard.  (Tr. 2-11, 2-17-18, 2-24-25).

## ARGUMENT

**DEFENSE COUNSEL'S CROSS-EXAMINATION OF SHARON CHACE SUGGESTED THAT DEFENDANT HAD SEXUALLY ASSAULTED HER, DEPRIVING DEFENDANT OF THE EFFECTIVE ASSISTANCE OF COUNSEL.**

The only issue contested before the jury was the identification of defendant as the assailant. Martens identified Dutcher and he denied the assault. She described her assailant as clean-shaven, but Dutcher's picture on March 31 showed him with a growth of beard. Whether the growth was recent or longstanding became vigorously contested between the Commonwealth and defendant. The Commonwealth produced Sharon Chace to testify that the beard was just starting to grow when she saw him on March 25.

Before Chace testified, defense counsel requested a side bar conference. He cautioned that the prosecutor was treading close to provoking a motion for a mistrial by eliciting an identification which was based on the witness having seen Dutcher during his alleged rape of her.* (Tr. 2-3-4). After a colloquy with the judge, the prosecutor agreed to caution the witness again. He also agreed to leave out of his

---

*Defendant had been acquitted of this rape charge. He had not denied being with Chace.

questioning reference to the fact that the witness had viewed the March 31 photo, which had been taken upon Dutcher's arrest for allegedly raping Chace. The prosecutor then carefully circumscribed his direct examination. The witness testified to the fact that she saw Dutcher on March 25 for 45 minutes to one hour; she described him as having a new growth of beard; and she compared him to the March 31 photo which had been admitted as an exhibit. No question or answer on direct examination suggested anything unusual about the March 25 encounter with Dutcher. (Tr. 2-5-6).

Cross-examination suggested to the jury, as direct examination had not, that defendant had sexually assaulted Chace. First, defense counsel established that Chace had not previously known Dutcher. Next, he elicited that she hated him "with good reason." Thus, the witness hated Dutcher, whom she had never met, after spending 45 minutes to one hour with him. The jury already knew that the police, for the first time, had a photograph of Dutcher a few days after Chace's encounter with him. (Tr. 1-135). The cross-examination thus suggested to the jury that Chace's brief encounter with the hated Dutcher was criminal, probably sexual, in nature. It is difficult to conclude that the jury would deduce anything else.

Cross-examination of Chace deprived defendant of

the effective assistance of counsel at a crucial stage of his trial. This is because counsel's performance fell "measurably below that which might be expected from an ordinarily fallible lawyer" and "likely deprived the defendant of an otherwise available, substantial ground of defense." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). Here, counsel's "performance fell below an objective standard of reasonableness and . . . there is a reasonable probability that but for this ineffective assistance the outcome of the trial would have been different." United States v. Carbone, 880 F.2d 1500, 1501 (1st Cir. 1989), cert. denied., 110 S.Ct. 1131 (1990).

Ostensibly, defense counsel was trying to show bias on the part of the witness. However, the three questions and answers suggested that the witness was biased for the reason that she had been assaulted by Dutcher. Bias was thus eclipsed by the invitation to the jury to believe that Dutcher had committed a rape a few weeks after the Martens assault. Counsel therefore made a tactical choice amounting to "manifestly unreasonable" cross-examination, which, if prejudicial, will require a new trial. Commonwealth v. Anderson, 398 Mass. 838, --- (1986), habeas granted sub. nom. Anderson v. Butler, 858 F.2d 16 (1st Cir. 1988).

after the alleged Martens rape. The suggestion of such a crime could hardly be more devastating to defendant in the eyes of the jury. Less inflammatory material suggesting bad acts by a defendant regularly requires a new trial. See e.g., Commonwealth v. Dion, 30 Mass App. 406 (1991); Commonwealth v. Smith, 21 Mass. App. 619, --- (1986), aff'd, 400 Mass. 1002 (1987).

Because of the manifest unreasonableness of cross-examination of Chace and its prejudicial impact, a new trial is required.

CONCLUSION

It is urged that the judgment of conviction be reversed.

RECEIVED
MAR 9 1992
PLYMOUTH COUNTY
DISTRICT ATTORNEY

# COMMONWEALTH OF MASSACHUSETTS.

APPEALS COURT FOR THE COMMONWEALTH,

AT BOSTON, March 6, 1992

IN THE CASE OF

COMMONWEALTH

*vs.*

JOHN E. DUTCHER.

pending in the Superior

Court for the County of Plymouth

ORDERED, that the following entry be made in the docket; viz.,—

Judgments affirmed.

BY THE COURT,

[signature], CLERK.

March 6, 1992.

OVER

NOTE:

The original of the within rescript will issue in due course, pursuant to M.R.A.P. 23

APPEALS COURT

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

91-P-897

COMMONWEALTH

vs.

JOHN E. DUTCHER.

MEMORANDUM AND ORDER UNDER RULE 1:28

A jury in Superior Court convicted the defendant of aggravated rape (G. L. c. 265, § 22[a]), burglary and assault in a dwelling house (G. L. c. 266, § 14), and assault and battery (G. L. c. 265, § 13A). [1] The defense was mistaken identification. Represented by different counsel on appeal, the defendant claims that he was deprived of the effective assistance of counsel as a result of trial counsel's cross-examination of a Commonwealth witness, Sharon Chase. We conclude that the nature of the cross-examination represented an exercise of trial tactics of the kind normally insulated from ineffective counsel claims, and which we do not place in the "manifestly unreasonable" category. Commonwealth v. Adams, 374 Mass. 722, 728 (1978). We affirm the judgments.

The Commonwealth relied almost entirely on identification evidence. The victim, whose face was "inches" away from her assailant during the incident,

[1] This last conviction was placed on file with the defendant's consent.

which occurred on February 19, 1987, described him as being in his late twenties, Caucasian, with long brown hair to the shoulders, a rather long nose which looked like it had been broken, and prominent cheekbones. The man appeared to be about five feet, ten inches tall, and he was wearing a bandanna. The victim testified that the man looked as if he had not shaved. She made a courtroom identification of the defendant as the man who had assaulted her. Tr. 1:68-72, 94, 101-102.

The Commonwealth produced Chase to buttress the victim's identification of the defendant. During direct examination, Chase testified that she had been in the company of the defendant for forty-five minutes to an hour on March 25, 1987, a little more than a month after the incident. She described the defendant on that date as having "long hair, shag-type haircut, about shoulder length, and looked like he hadn't shaved in a couple days." Shown a photograph of the defendant which had been taken on March 31, 1987, Chase testified that he had less hair on his face when she saw him on March 25. Chase, thus, bolstered two aspects of the victim's description of the defendant: that he had long hair to the shoulders and that he needed a shave. Even though her contact with the defendant occurred a month following the incident, her testimony helped establish that the defendant, during the early months of 1987, fit the victim's description rather than that of the defense

witnesses ("well-groomed"). The prosecutor did not inquire of Chase as to the circumstances under which she had met the defendant that evening.

The brief cross-examination of Chase was as follows:

> Trial counsel: "Ms. Chase, had you known John Dutcher before March 25?"
>
> The witness: "No, I did not."
>
> Trial counsel: "Would it be fair to say, Ms. Chase, you don't like Mr. Dutcher?"
>
> The witness: "There is good reason."
>
> Trial counsel: "In fact, you hate Mr. Dutcher, don't you?"
>
> The witness: "You bet." Tr. 2:7.

The defendant claims on appeal that when trial counsel elicited testimony that Chase had "good reason" to dislike the defendant, the jury would necessarily conclude that the defendant had sexually assaulted Chase. As a result, the defendant contends, the cross-examination caused him undue prejudice, and he is therefore entitled a new trial.

Trial counsel was aware of the potential damage Chase's testimony might do to the defense. At a bench conference, he mentioned that Chase had been the alleged victim of a previous sexual assault by the defendant and forewarned that if Chase were to testify that she had seen the defendant on March 25, and were to view a photograph of the defendant taken on March 31, the testimony would "obviously implicat[e the defendant in]

another criminal action." The prosecutor stated that the witness had been appropriately instructed, however, and the judge allowed her testimony. Tr. 2:3-5.

That trial counsel sought to mitigate any conceivable damage which would be caused by Chase's testimony speaks to his attentiveness. As a result of his efforts, the prosecutor in his direct examination did not inquire of Chase as to the circumstances under which she had met the defendant. It is true that the jury might have suspected from other evidence that the defendant was a suspect in an unrelated criminal case at the time that he was asked to come to the police station to have a photograph taken, and Chase's testimony on cross-examination had a tendency to suggest that her encounter with the defendant was criminal, if not sexual. Ineffective assistance of counsel is not established, however, merely because trial counsel elicits testimony that a defendant had been arrested for an unrelated crime. See, e.g., Commonwealth v. Anderson, 19 Mass. App. Ct. 968. 969-970 (1985). See also, Commonwealth v. Fuller, 394 Mass. 251, 258 (1985). Here, in fact, counsel did not elicite such testimony. No crime was mentioned during cross-examination.

In context, trial counsel was attempting to make the best of a difficult situation by electing to exercise his "right to reasonable cross-examination of [Chase] for the purpose of showing bias." Commonwealth

v. Michel, 367 Mass. 454, 459 (1975). The witness's response that she had "good reason" to dislike the defendant was unanticipated. The cross-examination was a tactical or strategic decision, and, in those circumstances, "we conduct our review with some deference to avoid characterizing as unreasonable a defense that was merely unsuccessful." Commonwealth v. White, 409 Mass. 266, 272 (1991).

Judgments affirmed.

By the Court (Fine, Jacobs, & Laurence, JJ.),

Nancy Turck Foley
Clerk

Entered: March 6, 1992.

COMMONWEALTH OF MASSACHUSETTS
SUPREME JUDICIAL COURT

PLYMOUTH, SS.

S.J.C. No. FAR-
(A.C. No. 91-P-897)

---

COMMONWEALTH
Appellee

v.

JOHN E. DUTCHER
Defendant/Appellant

---

ON APPEAL FROM A JUDGMENT
OF THE SUPERIOR COURT

---

DEFENDANT/APPELLANT JOHN E. DUTCHER'S
APPLICATION FOR LEAVE TO OBTAIN
FURTHER APPELLATE REVIEW

---

RICHARD J. SHEA, ESQ.
P.O. Box 261
(State House Post Office)
Boston, MA 02133
(617) 523-1962
BBO #456300

Counsel for John Dutcher

Now comes John E. Dutcher and applies for leave to obtain further appellate review of the Appeals Court's decision affirming his convictions for aggravated rape, burglary and assault in a dwelling house, and assault and battery.

**PRIOR PROCEEDINGS**

Defendant John Dutcher was indicted in Plymouth Superior Court on May 27, 1987. Defendant was tried before a jury on January 26 and January 27, 1989, and was found guilty of all charges. He was given concurrent sentences of 20-40 years at Cedar Junction on the rape and assault/burglary charges. (The assault and battery indictment was filed with defendant's consent.) The Appeals Court affirmed the convictions on March 6, 1992.

**STATEMENT OF FACTS**

The memorandum opinion of the Appeals Court adequately states the facts relevant to this application for further appellate review.

**ISSUE PRESENT FOR FURTHER APPELLATE REVIEW**

Whether defense counsel's cross-examination of the Commonwealth's identification witness who had previously accused defendant of raping her amounted to ineffective assistance of counsel, as manifestly unreasonable.

## ARGUMENT

**DEFENSE COUNSEL'S CROSS-EXAMINATION OF SHARON CHACE SUGGESTED THAT DEFENDANT HAD SEXUALLY ASSAULTED HER, DEPRIVING DEFENDANT OF THE EFFECTIVE ASSISTANCE OF COUNSEL.**

On direct examination, witness Chace that she saw Dutcher on March 25, 1987, for 45 minutes to one hour; she described him as having a new growth of beard; and she compared him to the March 31, 1987 photo which had been admitted as an exhibit. No question or answer on direct examination suggested anything unusual about the March 25 encounter with Dutcher.

The entire cross-examination was as follows:

"Q. Ms. Chace, had you known John Dutcher before March 25th?

A. No, I did not.

Q. Would it be fair to say, Ms. Chace, you don't like Mr. Dutcher?

A. There is good reason.

Q. In fact, you hate Mr. Dutcher, don't you?

A. You bet.

[Defense counsel]: No further questions." (Tr. 2-7).

Cross-examination suggested to the jury, as direct examination had not, that defendant had sexually assaulted Chace. First, defense counsel established that Chace had not previously known Dutcher. Next, he

elicited that she hated him "with good reason." Thus, the witness hated Dutcher, whom she had never met, after spending 45 minutes to one hour with him. The jury already knew that the police, for the first time, had a photograph of Dutcher a few days after Chace's encounter with him. In context, the cross-examination thus suggested to the jury that Chace's brief encounter with the hated Dutcher was criminal, probably sexual, in nature. It is difficult to conclude that the jury would deduce anything else.

Cross-examination of Chace deprived defendant of his Sixth Amendment right to effective assistance of counsel at a crucial stage of his trial.*/ This is because counsel's performance fell "measurably below that which might be expected from an ordinary fallible lawyer" and "likely deprived the defendant of an otherwise available, substantial ground of defense." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). Here, counsel's "performance fell below an objective standard of reasonableness and . . . there is a reasonable probability that but for this ineffective assistance the outcome of the trial would have been

*/ At oral argument in the Appeals Court, the Commonwealth waived its argument that the issue of ineffective assistance of counsel could not be raised on direct appeal from a conviction, but must first be raised in a motion for a new trial.

different." United States v. Carbone, 880 F.2d 1500, 1501 (1st Cir. 1989), cert. denied, 110 S.Ct. 1131 (1990), citing Strickland v. Washington, 466 U.S. 668 (1984).

Ostensibly, defense counsel was trying to show bias on the part of the witness. However, the three questions and answers suggested that the witness was biased for the reason that she had been assaulted by Dutcher. Bias was thus eclipsed by the invitation to the jury to believe that Dutcher had committed a rape or assault a few weeks after the Martens assault. Counsel therefore made a tactical choice amounting to "manifestly unreasonable" cross-examination, which, if prejudicial, will require a new trial. Commonwealth v. Anderson, 398 Mass. 838, 839 (1986), habeas granted sub. nom. Anderson v. Butler, 858 F.2d 16 (1st Cir. 1988).

Case law in other states had deemed similar conduct by defense counsel to be serious error requiring a new trial. In People v. Dalessandro, 165 Mich. App. 569, 419 N.W.2d 609, app. denied, 430 Mich. 880, 423 N.W.2d 573 (1988), defense counsel made a tactical choice to call a witness who testified favorably to defendant on direct examination but who was cross-examined with prior inconsistent statements implicating defendant. "Without the statements, there

probably was no case against defendant." Such a tactical choice was serious error which prejudiced defendant. 419 N.W.2d at 613. And, in People v. Perez, 83 Cal.App.3d 718, 735, 148 Cal. Reptr. 90, 100 (1978), defense counsel had brought out on direct examination of defendant a prior conviction for heroin possession, an egregious error constituting ineffective assistance of counsel. See also Jerome B. v. Cabell, 68 Cal.App.3d 395, 403, 137 Cal. Reptr. 341 (1977)(hearsay incriminating client defendant elicited by counsel).

In the present case, defense counsel's mistake was of the magnitude of error in Massachusetts cases where ineffective assistance of counsel has been found. In Commonwealth v. Frisino, 21 Mass. App. 551, 553-54 (1986), counsel failed to object or request a limiting instruction concerning a witness' prior inconsistent statement, allowing that statement to serve as the only substantive evidence of defendant's guilt. In Commonwealth v. Childs, 23 Mass. App. 33, 36 (1986), aff'd, 400 Mass. 1006 (1987), and Commonwealth v. Rossi, 19 Mass. App. 257, 258-60 (1985), counsel allowed defendants to be impeached with convictions not usable for that purpose. In Commonwealth v. Haggerty, 400 Mass. 437, 442 (1987), counsel failed to seek a medical expert on the cause of death where the only

defense to murder was lack of causation. See also Commonwealth v. Cameron, 31 Mass. App. 928, 930 (1991)(failure to argue at sentencing).

Here the failure of counsel was not only "manifestly unreasonable" but also created a "reasonable probability" that the jury was swayed by the cross-examination to convict defendant. See Strickland v. Washington, supra, 446 U.S. at 695; Commonwealth v. Anderson, supra, 398 Mass. at 839. The case was closely contested on the issue of identification, with the presence or absence of Dutcher's beard in February and March the subject of much testimony. Defendant testified in his own behalf and produced three witnesses who testified that he had a beard during February and March 1987. Thus, there was ample basis for a verdict of not guilty, at least until the Chace cross-examination conveyed its message to the jury.

The suggestion of defendant's involvement in a sexual assault on Chace a few weeks after the alleged Martens rape could hardly be more devastating to defendant in the eyes of the jury. Clearly, evidence of other criminal acts is not admissible, save where it proves motive, plan, knowledge or the like. E.g., Commonwealth v. Libran, 405 Mass. 634, 640 (1989). Less inflammatory material suggesting bad acts by a

C E R T I F I C A T E

I, Marilyn Silvia, Official Court Reporter in and for the courts of the Commonwealth of Massachusetts, do hereby certify that the foregoing transcript, Pages 1 through 13, are a true and accurate transcription of my stenographic notes taken in the aforementioned matter, to the best of my skill and ability.

Marilyn Silvia

Marilyn Silvia
Official Court Reporter

--0--

5

149

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.

SUPERIOR COURT
PLCR84018-20

COMMONWEALTH

vs.

JOHN E. DUTCHER

MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE, SUPERIOR COURT RULE 61A

In January of 1989, a jury convicted defendant John Dutcher of aggravated rape, burglary and assault in a dwelling house, and assault and battery. For the reasons discussed below, Dutcher's motion for a new trial is **denied**.

## BACKGROUND

Dutcher was represented at trial by Attorney John Yunits on Indictment numbers 84018-84020. The trial occurred on January 26 and 27 with Judge Hurd presiding. The jury heard the following evidence. On February 18, 1987, the victim lived with her children in the first floor apartment at 16 Pine Street in Brockton. At 11:30 p.m., she was asleep on the living room couch with an overhead light and the television on. She awoke to find a man standing a foot away from her. She saw his face. The man punched her in the face, climbed on top of her, tore her shirt, and stated, "It's every woman's fantasy to be raped." He then tore open her pajamas, tore her underpants, and forced his fingers inside her vagina. The victim saw the assailant's entire face while he was on top of her. He noticed a picture of her kids and asked whether they were hers. At that point, the victim stopped struggling. The assailant forced his penis in her mouth and

2.8.18 cc:
DA+VD

ejaculated, causing her to vomit. He then left and the victim called police, who called her mother. She told her mother that she would never forget the assailant's face.

The victim was hysterical when police arrived but gave a general description of the assailant, including that he was white, his hair color and length, his approximate age and height, and details of his facial features such as a big nose and high cheekbones. She described his facial hair and stated that he looked like he needed a shave. The victim was treated at Brockton Hospital, where a photograph of her face was taken. Police did not examine her apartment for fingerprint evidence.

The next afternoon, the victim met with the Brockton Police and looked at a photograph book containing 1,000 pictures of white men. Dutcher's photograph was not included in this book. Detective LaGarde drew a composite picture of the assailant based on the victim's description. The following day, the victim looked at another 500 photographs. Dutcher's photograph was not included in this array. However, the victim picked a photograph of a young man and stated that his nose and mouth looked "similar" to the assailant's. At some point, police took a photograph of Dutcher. Six weeks later, the victim was shown an array of eight pictures and she selected Dutcher's photograph.

The victim identified Dutcher in court as her assailant. She also identified the clothes she was wearing during the assault. The victim and the police detective testified that Dutcher looked different because he had a full mustache and beard at the time of trial. Sharon Chace testified that she saw Dutcher on March 25, 1987 for 45 minutes and on that date he had shoulder length hair and had not shaved in a couple of days. Chase identified Dutcher in court. On cross-examination, Chace admitted that she hated Dutcher "for good reason."[1]

[1] Dutcher had sexually assaulted Chace, although the jury was never apprised of this fact.

Dutcher's defense was misidentification. Dutcher testified, as did his sister, his sister's friend and his brother-in-law, that in February of 1987, he had a well-groomed mustache and short beard. Dutcher testified that at the time of the assault, he was at his brother's house. Defense counsel did not dispute that the burglary and rape occurred, but argued that Dutcher was not the assailant.

On January 27, 1989, the jury convicted Dutcher of aggravated rape, burglary and assault in a dwelling house, and assault and battery. Prior to sentencing, Dutcher was committed to the Massachusetts Treatment Center at Bridgewater for evaluation as a sexually dangerous person, and two qualified examiners opined that he was sexually dangerous. At his sentencing hearing on March 22, 1989, Dutcher waived a sexual dangerousness hearing and the judge, after a waiver colloquy, found him to be sexually dangerous and committed him to the Treatment Center. The judge also sentenced Dutcher to concurrent terms of twenty to forty years in prison for the rape and burglary convictions and placed the assault and battery conviction on file. Dutcher was represented by new counsel, Richard Shea, on appeal. The Appeals Court affirmed Dutcher's convictions in an unpublished decision. See *Commonwealth* v. *Dutcher*, 32 Mass. App. Ct. 1108, rev. den., 412 Mass. 1104 (1992).

In May of 1989, in a separate case, Dutcher pleaded guilty to Indictment 84057 for aggravated rape of a different victim and was sentenced to twenty to forty years in prison. He also pleaded guilty to Indictment 84058 for rape of a third victim and was sentenced to eighteen to twenty years in prison. The court ordered that both sentences run concurrently with each other and with the March 1989 aggravated rape sentence.

In September of 2004, Dutcher filed a Motion for Release from Unlawful Restraint, asserting that his commitment as an SDP was improper. Dutcher also filed a pro se motion to

withdraw his May 1989 guilty plea. This Court (Giles, J.) denied both motions but awarded Dutcher 295 days of jail credit toward his sentence. The Appeals Court affirmed the denial of Dutcher's motions. See *Commonwealth* v. *Dutcher*, 2007 WL 1518924 (Mass. App. Ct. Rule 1:28), rev. den., 449 Mass. 1108 (2007).

In 2009, Dutcher filed a motion for post-conviction discovery. Prior to trial, the Commonwealth had agreed to produce any and all scientific tests. It was unclear from the record whether Dutcher received any test results, including DNA testing. Dutcher sought an inventory and access to any DNA evidence as well as funds for independent testing. In 2010, Dutcher filed a motion for a new trial. This Court (Locke, J.) denied both motions. The Appeals Court affirmed the denial of the motions, noting that Dutcher had not filed an affidavit from trial counsel on the issue of the scientific tests and the evidence was not newly discovered. See *Commonwealth* v. *Dutcher*, 2012 WL 502603 at *2 (Mass. App. Ct. Rule 1:28). With respect to the new trial motion, the Appeals Court rejected Dutcher's claim that the victim's identification from a photo array and her eyewitness testimony were unreliable and inadmissible. See *id.* at *1-2.

In May of 2013, Dutcher filed a second Motion For New Trial Pursuant to Mass. R. Crim. P. 30(b) and G.L. c. 278A. This Court (Gaziano, J.) denied this motion but appointed counsel and ordered discovery of whether the Commonwealth retained any biological materials gathered from a rape kit and whether such materials were suitable for DNA testing. Dutcher filed a notice of appeal in February of 2014 and his appeal is pending in the Appeals Court, No. 2014-P-0261.

In 2015, Dutcher filed a motion for a corrected mittimus, arguing that he should have received 720 days of jail time credit. He also filed a motion to vacate his sentences, arguing that

the aggravated rape and burglary convictions were duplicative because they involved the same victim on the same date. This Court (McGuire, J.) denied those motions. The Appeals Court affirmed the denial of the motions, noting that the aggravated rape and burglary convictions each required proof of an element not required for the other and therefore were not duplicative. See *Commonwealth* v. *Dutcher*, 2016 WL 6610313 at *2 (Mass. App. Ct. Rule 1:28), rev. den., 476 Mass. 1107 (2016).

Dutcher has filed an affidavit in support of his motion averring that he was never informed by counsel about the pretrial conference or that he was conceding the crimes charged in Indictments 84018-20, relieving the Commonwealth of its burden to prove the crimes beyond a reasonable doubt. He also avers that he is factually innocent of the crimes of which the jury convicted him.

**DISCUSSION**

A motion for a new trial pursuant to Mass. R. Crim. P. 30(b) may be granted if it appears that justice may not have been done. *Commonwealth* v. *Brescia*, 471 Mass. 381, 388 (2015); *Commonwealth* v. *Scott*, 467 Mass. 336, 344 (2014). Such a motion is committed to the sound discretion of the judge. *Brescia*, 471 Mass. at 391; *Scott*, 467 Mass. at 344.

**Request for Hearing**

Dutcher requests a hearing under Superior Court Rule 61A. That rule, which governs motions for post-conviction relief, does not expressly mention a hearing but states that the judge may act in the manner she deems appropriate as authorized by Mass. R. Crim. P. 30. Rule 30(c)(3) provides: "The judge may rule on the issue or issues presented by such motion on the basis of the

facts alleged in the affidavits without further hearing if no substantial issue is raised by the motion or the affidavits." The judge has broad discretion to determine whether a new trial motion properly can be denied on the papers or should proceed to an evidentiary hearing. *Commonwealth* v. *Vaughn*, 471 Mass. 398, 404 (2015); *Commonwealth* v. *Goodreau*, 442 Mass. 341, 348 (2004). The court must consider the seriousness of the issues raised by the papers and supporting materials as well as the adequacy of the defendant's showing. *Goodreau*, 442 Mass. at 348; *Commonwealth* v. *Lys*, 91 Mass. App. Ct. 718, 721-722 (2017). The defendant must present sufficient credible information to cast doubt on the issues raised. *Goodreau*, 442 Mass. at 348. The court also considers whether holding a hearing will add anything to the information that has been presented in the motion and affidavits. *Id.*

Dutcher's papers and supporting materials do not raise a substantial issue that warrants an evidentiary hearing. This Court need not and does not credit his uncorroborated, self-serving affidavit. See *Vaughn*, 471 Mass. at 405 (court has discretion not to credit defendant's affidavit even if uncontroverted by anything else in record). Conspicuously absent is an affidavit from trial counsel or any explanation for defendant's failure to include one in the record. See *Lys*, 91 Mass. App. Ct. at 721-722. Moreover, Dutcher's submission reveals that all of his claims are either waived due to the failure to assert them sooner or estopped because they already have been addressed by various courts. Accordingly, this Court, in its discretion, declines to hold an evidentiary hearing. Nor is oral argument on the motion necessary, given the extensive briefing by both parties.[2]

---

[2] Rule 30(c) does not require a hearing on a new trial motion, stating only that the parties shall have at least 30 days' notice of "any hearing." See Mass. R. Crim. P. 30(c)(7). Cf. Mass. R. Crim. P. 13(e) (party has a right to hearing on pre-trial motion). Nor does Superior Court Rule 61A require a hearing.

**Waived Claims**

Dutcher asserts numerous legal errors which he claims entitle him to a new trial. However, this Court concludes that he has waived these claims of error.

> If a defendant fails to raise a claim that is generally known and available at the time of his direct appeal or in the first motion for postconviction relief, the claim is waived. . . . This requirement is critical to achieve finality in the litigation of criminal cases and to assure that limited judicial resources are not consumed by claims that should have been raised earlier.

*Rodwell* v. *Commonwealth*, 432 Mass. 1016, 1018 (2000) (internal citations omitted). Even constitutional and structural error is subject to the doctrine of waiver. *Commonwealth* v. *Roberts*, 472 Mass. 355, 359 (2015); *Commonwealth* v. *Morganti*, 467 Mass. 96, 101-102, cert. den., 135 S.Ct. 356 (U.S. 2014). "It is neither unreasonable nor unduly burdensome to require a defendant to advance his contentions, even those with constitutional ramifications, at the first opportune time." *Commonwealth* v. *Chase*, 433 Mass. 293, 297 (2001). A defendant who has had a fair opportunity to raise a claim may not belatedly invoke it to reopen a proceeding that has run its course. *Id.*

The court will review a waived claim only to determine whether it presents a substantial risk of a miscarriage of justice: a serious doubt whether the outcome of the trial might have been different had the error not been made. *Brescia*, 471 Mass. at 389; *Commonwealth* v. *Simmons*, 448 Mass. 687, 691 (2007). "Only rarely will an error exert an influence of this magnitude." *Simmons*, 448 Mass. at 691. Dutcher first contends that his failure to attend the pretrial conference on July 6, 1987 was a structural error that violates due process and automatically requires a new trial. He further argues ineffective assistance of counsel, claiming that he was never informed about the pretrial conference. Dutcher has waived these claims by failing to raise them in his direct appeal and prior motions for a new trial. See *Morganti*, 467 Mass. at 101-102; *Rodwell*, 432 Mass. at

1018. Moreover, he has failed to demonstrate a substantial likelihood of a miscarriage of justice. This Court does not credit his unsubstantiated statement that he was excluded from the pretrial conference and in any event, he cannot show that the outcome of the trial would have been different had he attended.

Dutcher further argues that defense counsel, without his knowledge or consent, relieved the Commonwealth of its burden to prove the elements of the crime beyond a reasonable doubt by conceding that a burglary and rape occurred. Dutcher contends that this ineffective assistance of counsel was compounded by jury instructions in which the judge stated that it was conceded that a burglary and rape occurred and he would only briefly define the elements of those crimes because it was conceded that they were met. Dutcher has waived these claims by failing to raise them in his direct appeal and prior motions for a new trial. See *Morganti*, 467 Mass. at 101-102; *Rodwell*, 432 Mass. at 1018.

Moreover, he has not shown a substantial likelihood of a miscarriage of justice. Defense counsel did not concede that Dutcher was the assailant; rather, he vigorously argued misidentification. The judge's instructions clearly and repeatedly stated that the Commonwealth was required to prove beyond a reasonable doubt that Dutcher committed the crimes charged. Counsel's concession that a burglary and rape had occurred was not conclusive of Dutcher's guilt and neither lessened the Commonwealth's burden of proof nor was a manifestly unreasonable trial strategy. See *Commonwealth* v. *Evelyn*, 470 Mass. 765, 770-771 & n.10 (2015) (no constitutional violation where defense's stipulation to defendant's guilt of manslaughter at murder trial was not manifestly unreasonable and defendant exercised his rights to confront and cross-examine witnesses); *Commonwealth* v. *Ortiz*, 466 Mass. 475, 484 (2013) (defendant's stipulation that substance seized was cocaine did not relieve Commonwealth of

burden of proving all other elements of offense and did not require new trial); *Commonwealth* v. *Plante*, 2016 WL 164217 at *2 (Mass. App. Ct. Rule 1:28), rev. den., 473 Mass. 1112 (2016) (no due process violation where counsel stipulated to three of four elements of charged crime as part of litigation strategy); *Commonwealth* v. *Mwamuye*, 2014 WL 551055 at *1 (Mass. App. Ct. Rule 1:28), rev. den., 467 Mass. 1107 (2014) (reversal not required where counsel stipulated that defendant was present on train where victim said she was indecently assaulted but disputed whether assault occurred). Cf. *Commonwealth* v. *Castillo*, 66 Mass. App. Ct. 34, 37 (2006); *Commonwealth* v. *Hill*, 20 Mass. App. Ct. 130, 132, rev. den., 395 Mass. 1104 (1985) (counsel's stipulation to the truth of facts conclusive of guilt is improper where it amounts to involuntary guilty plea by defendant).

Dutcher next argues that his counsel was ineffective in failing to test the victim's clothing, which was lost during the trial, because any vomit on the clothing may have contained semen which could be DNA tested to absolve him. This issue is waived by Dutcher's failure to raise it in his direct appeal and prior new trial motions. See *Morganti*, 467 Mass. at 101-102; *Rodwell*, 432 Mass. at 1018. Further, as noted by the Appeals Court, the issue of DNA testing was not newly discovered and Dutcher lacked any affidavit from trial counsel on that issue; therefore, no new trial is warranted. See *Commonwealth* v. *Dutcher*, 2012 WL 502603 at *2 (Mass. App. Ct. Rule 1:28). Finally, the April 22, 1987 laboratory report states that no seminal fluid was detected on the victim's shirt or underwear. Dutcher therefore has not demonstrated a substantial likelihood of a miscarriage of justice.

Dutcher further contends that counsel was ineffective in failing to request an alibi instruction after Dutcher testified that he was at his brother's house at the time of the assault. This

argument is waived by Dutcher's failure to raise it in his direct appeal and prior new trial motions. See *Morganti*, 467 Mass. at 101-102; *Rodwell*, 432 Mass. at 1018. Nor has he shown a substantial likelihood of a miscarriage of justice from the absence of an alibi instruction, given counsel's vigorous misidentification defense and the entirety of the instructions given. See *Commonwealth* v. *Thomas*, 439 Mass. 362, 371 (2003); *Commonwealth* v. *Knight*, 437 Mass. 487, 499 (2002) (alibi instruction is not required where jury charge as whole makes clear that Commonwealth must prove beyond reasonable doubt that defendant committed crime charged).

Dutcher next argues that he was prejudiced by the admission of prior bad act testimony by Chace that she had "good reason" to hate him. This argument is waived by Dutcher's failure to raise it in his direct appeal and prior new trial motions. See *Morganti*, 467 Mass. at 101-102; *Rodwell*, 432 Mass. at 1018. Moreover, Judge Gaziano rejected the proposition that counsel was ineffective for eliciting this testimony from Chase on cross-examination. Indeed, Chace's statements were evidence of bias that was used to undermine her credibility. Dutcher has not shown a substantial likelihood of a miscarriage of justice.

Also waived is Dutcher's argument that the prosecutor improperly vouched for the victim's credibility by arguing in closing that she should be believed because she never wavered in her identification of Dutcher and was not shaken on cross-examination. See *Morganti*, 467 Mass. at 101-102; *Rodwell*, 432 Mass. at 1018. Improper vouching occurs when the prosecutor expresses a personal belief in a witness's credibility or indicates that he has knowledge independent of the evidence before the jury. *Commonwealth* v. *Martinez*, 476 Mass. 186 (2017); *Commonwealth* v. *Caillot*, 454 Mass. 245, 259 (2009), cert. den., 559 U.S. 948 (2010). A prosecutor is entitled to comment on and draw inferences from the trial evidence and may state logical reasons why a

witness's testimony should be believed. *Id.* Dutcher has not shown a substantial likelihood of a miscarriage of justice because the prosecutor's statement did not constitute improper vouching.

In addition, Dutcher has waived the argument that the reasonable doubt instruction was erroneous because it included "moral certainty" language. In any event, due process does not require that any particular words be used to instruct the jury on the Commonwealth's burden of proof as long as the instruction impresses upon them the need to reach a subjective state of near certitude as to the defendant's guilt. *Commonwealth* v. *Veiovis*, 477 Mass. 472, 489 (2017); *Commonwealth* v. *Russell*, 470 Mass. 464, 468 (2015). Although the phrase "moral certainty" has been criticized, when used in the traditional *Webster* charge, it does not improperly lower the government's burden of proof. *Russell*, 470 Mass. at 469, 475-476. At the time of Dutcher's trial in 1989, the *Webster* charge was the "gold standard" for instructions on reasonable doubt. See *id.* at 475. Although the Supreme Judicial Court prospectively has required the use of more modernized language, the use of the *Webster* standard in this case did not create a substantial risk that the jury applied a lower standard of proof than due process requires.

**Claims Already Addressed**

A Rule 30 motion cannot be used as a vehicle to compel consideration of questions of law on which the defendant has had his day in appellate court. *Commonwealth* v. *Watson*, 409 Mass. 110, 112 (1991). Where a new trial motion simply seeks to re-litigate issues that were previously decided by a motion judge and rejected on appeal, principles of direct estoppel bar the defendant from attempting to re-litigate those issues. *Commonwealth* v. *Ellis*, 475 Mass. 459, 475 (2016); *Commonwealth* v. *Rodriguez*, 443 Mass. 707, 710 (2005). These principles apply to several of Dutcher's claims.

Dutcher argues that aggravated rape was a lesser included offense of aggravated burglary and therefore he could not be sentenced on both convictions. The Appeals Court already has addressed and rejected this argument. See *Commonwealth* v. *Dutcher*, 2016 WL 6610313 at *2 (Mass. App. Ct. Rule 1:28), rev. den., 476 Mass. 1107 (2016). Accordingly, he is estopped from re-litigating that issue. Dutcher also contends that his plea agreement on Indictments 84057 and 84058 was invalid because he was "mis-informed as to the lesser included offense" of rape. This argument fails as just stated. Moreover, the Appeals Court has affirmed this Court's denial of Dutcher's motion to withdraw his May 1989 guilty plea. See *Commonwealth* v. *Dutcher*, 2007 WL 1518924 (Mass. App. Ct. Rule 1:28), rev. den., 449 Mass. 1108 (2007). He cannot re-litigate that issue here.

Dutcher further argues that the victim's identification of him as the assailant was unduly suggestive and should have been suppressed. Again, the Appeals Court has addressed and rejected this argument, and this Court will not revisit it. See *Commonwealth* v. *Dutcher*, 2012 WL 502603 at *2 (Mass. App. Ct. Rule 1:28).

Finally, Dutcher's argument that this Court erred in failing to give a requested *Bowden* instruction was addressed and rejected in Judge Gaziano's decision denying the second new trial motion. That decision is currently on appeal. Accordingly, this Court will not revisit the issue.[3] Dutcher has failed to demonstrate that justice was not done in this case.

---

[3] This argument lacks merit insofar as a *Bowden* instruction is discretionary with the judge and there is no error as long as the judge does not foreclose the jury from considering the inadequacy of the police investigation. See *Commonwealth* v. *Issa*, 466 Mass. 1, 21 n. 26 (2013).

**ORDER**

For the foregoing reasons, it is **ORDERED** that Defendant's Motion To Vacate, Set Aside, Or Correct Sentence, Superior Court Rule 61A is **DENIED**.

Angel Kelley Brown
Justice of the Superior Court

**DATED:** February 7, 2018

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH SS. APPEALS COURT

NO. 2018-P-0308

---

JOHN E. DUTCHER, APPELLANT

-V-

COMMONWEALTH OF MASSACHUSETTS, APPELLEE

---

ON APPEAL FROM THE DENIAL OF A NEW TRIAL BY THE PLYMOUTH SUPERIOR COURT, ANGEL KELLY BROWN ASSOCIATE JUSTICE, PRESIDING

---

# APPELLATE BRIEF

---

JOHN E. DUTCHER, PRO SE
BOX 43
NORFOLK MA 02056

APRIL 2018

## TABLE OF CONTENTS

| | |
|---|---|
| TABLE OF AUTHORITIES | ii-v |
| ISSUES PRESENTED ON APPEAL | 1-2 |
| STATEMENT OF THE CASE | 3-4 |
| STATEMENT OF FACTS | 4-9 |
| SUMMARY OF THE ARGUMENTS | 9-19 |
| LEGAL ARGUMENTS | 19-42 |
| CONCLUSION | 42 |
| CERTIFICATE OF SERVICE | 43 |
| CERTIFICATE OF COMPLIANCE | 43 |

# TABLE OF AUTHORITIES

CITATION: PAGE NO:

MASSACHUSETTS

| CITATION | PAGE NO |
|---|---|
| COMM. OF CORR. V. SUP. CT. DEPT OF THE TRIAL COURT FOR COUNTY OF WORCESTER, 446 Mass.123 (2006) | 23 |
| COM., V. BONDS, 445 MASS. 821 (2006) | 33 |
| COM., V. BROWN, 395 MASS. 604 (1985) | 29 |
| COM., V. DEMARS, 42 MASS.APP.CT. 788 (1997) | 35 |
| COM., V. DEPASQUALE, 91 MASS.APP.CT. 1102 (2017) | 41 |
| COM., V. DOUGAN, 377 MASS. 303 (1979) | 28 |
| COM., V. FLANAGAN, 20 MASS.APP.CT. 472 (1985) | 31 |
| COM., V. GOLLMAN, 51 MASS.APP.CT. 839 (2001) | 34 |
| COM., V. HELFANT, 398 MASS. 214 (1986) | 33 |
| COM., V. HISER, 91 MASS.APP.CT. 1119 (2017) | 41 |
| COM., V. JACKSON, 23 MASS.APP.CT. 975 (1987) | 31 |
| COM., V. JOHNSON 420 MASS. 458 (1995) | 28 |
| COM., V. JULIEN, 59 MASS.APP.CT. 679 (2003) | 33 |
| COM., V. KOZEC, 399 MASS. 514 (1987) | 35 |
| COM., V. REID, 29 MASS.APP.CT. 537 (1985) | 32 |
| COM., V. ROSA, 422 MASS. 18 (1996) | 32 |
| COM., V. VILLALOBOS, 7 MASS.APP.CT. 905 (1979) | 36 |
| COM., V. WALKER, 442 MASS. 185 (2004) | 36 |
| EMPIRE APTS. INC. V. GRAY 353 MASS. 604 (1985) | 29 |
| SC., 426 MASS. 1008 (1998) | 36 |

TABLE OF AUTHORITIES CONT'

CITATION PAGE NO

FEDERAL COURTS

| CITATION | PAGE NO |
|---|---|
| ABDUR RAHEEM V. KELLY 257 F.3D 122 (2001) | 27 |
| ANDERSON V. BUTLER 23 F.3D 593 (1994) | 24 |
| BROOKS V MCCAUGHTRY 380 F.3D 1009 (2004) | 39 |
| NORDE V. KEANE 294 F.3D 401 (2002) | 20 |
| U.S. V. DAVENPORT 519 F.3D 940 (2008) | 30 |
| U.S. V. DECOLOGERO 530 F.3D 36 (2008) | 27 |
| U.S. V. GONZALEZ 110 F.3D 936 (1997) | 20 |
| U.S. V. HARBIN 250 F.3D 532 (2001) | 20 |
| U.S. V. LLOYD 71 F.3D 408 (1995) | 25 |
| U.S. V. ORETO 37 F.3D 739 (1994) | 29 |
| U.S. V. PETTY 132 F.3D 373 (1997) | 30 |
| U.S. V. SANCHEZ 354 F.3D 70 (2004) | 39 |
| U.S. V. SHEA 211 F.3D 658 (2000) | 21 |
| U.S. V. WIGGINS 429 F.3D 31 (2005) | 37 |
| WILLIAMS V. SINGLETARY 78 F.3D 1510 (1996) | 22 |
| YARBOROUGH V. KEANE 101 F.3D 894 (1996) | 20 |

U.S. SUPREME COURT

| CITATION | PAGE NO |
|---|---|
| ARIZONA V. FULMINANTE 499 U.S. 279 (1991) | 19 |
| BANKS V. DRETKE 540 U.S. 668 (2004) | 25 |
| BRADY V. MARYLAND 373 U.S. 83 (1963) | 25 |
| BREWER V. WILLIAMS 430 U.S. 387 (1977) | 39 |

TABLE OF AUTHORITIES CONT'

| CITATION: | PAGE NO: |
|---|---|
| COLEMAN V. ALABAMA 399 U.S. 1 (1970) | 37 |
| COUNTY COURT V. ALLEN 442 U.S. 140 (1979) | 24 |
| DUSKY V. U.S. 362 U.S. 402 (1960) | 37 |
| IN RE WINSHIP 397 U.S. 358 (1970) | 24 |
| KIMMELMAN V. MORRISON 477 U.S. 365 (1986) | 28 |
| MANSON V. BRATHWAITE 432 U.S. 98 (1977) | 27 |
| MCNEIL V. WISCONSIN 501 U.S. 171 (1991) | 38 |
| MULLANEY V. WILBUR 421 U.S. 684 (1975) | 24 |
| NEAL V. BIGGERS 409 U.S. 188 (1972) | 26 |
| STOVALL V. DENNO 388 U.S. 293 (1967) | 26 |
| STRICKLAND V. WASHINGTON 466 U.S. 668 (1984) | 37 |
| U.S. V. BAGLEY 473 U.S. 667 (1985) | 26 |
| U.S. V. CRONIC 466 U.S. 648 (1984) | 39 |
| WATKINS V. SANDERS 449 U.S. 341 (1981) | 29 |
| WHALEN V. U.S. 445 U.S. 684 (1980) | 21 |
| YARBOROUGH V. GENTRY 540 U.S. 1 (2003) | 39 |

OTHER

| | |
|---|---|
| ARTICLE XII | 32 |
| G.L. C. 265 §22(a) | 22 |
| G.L. C. 266 §14 | 22 |

TABLE OF AUTHORITIES CONT'

| CITATION: | PAGE NO: |
|---|---|
| G.L. C. 278 §28E | 37 |
| S.J.C. RULES 3:07, 3.8, 8.6 | 35 |
| MASS.G. EVID. 404(b) | 32 |

ISSUES PRESENTED ON APPEAL

#1: WHETHER THE DEFENDANT WAS ENTITLED TO ATTEND THE PRETRIAL CONFERENCE, THE FAILURE OF WHICH WAS A STRUCTURAL DEFECT IN THE TRIAL PROCESS?

pp. 19-20

#2: WHETHER THE COURT WAS REQUIRED TO DISMISS THE LESSER INCLUDED OFFENSE OF AGGRAVATED RAPE BECAUSE IT WAS AN ELEMENT OF THE CRIME OF AGGRAVATED BURGLARY?

pp. 20-23

#3: WHETHER THE DEFENDANT SHOULD HAVE BEEN NOTIFIED THE COMMONWEALTH WOULD BE RELIEVED OF ITS BURDEN TO PROVE EVERY ELEMENT OF THE CRIMES CHARGED BEYOND A REASONABLE DOUBT?

pp. 23-24

#4: WHETHER THE LOSS OF KEY EVIDENCE IN THE CASE BY THE GOVERNMENT DENIED THE DEFENDANT DUE PROCESS ON DIRECT APPEAL AND COLLATERAL REVIEW, WHERE TESTS WOULD HAVE PROVED HIS INNOCENCE?

pp. 25-26

#5: WHETHER THE IDENTIFICATION OF THE DEFENDANT ONE-ON-ONE WITH THE GOVERNMENT WAS SUGGESTIVE IN VIOLATION OF THE 14TH AMENDMENT?

pp. 26-29

#6: WHETHER THE DEFENDANT WAS DENIED AN ALIBI INSTRUCTION TO THE JURY WHERE HIS ATTORNEY FAILED TO NOTIFY THE GOVERNMETN OF DEFENDANT'S ALIBI DEFENSE?

pp. 29-30

#7: WHETHER THE GOVERNMENT'S FAILURE TO INVESTIGATE THE CRIME SCENE OF OTHER PERPETRATORS WAS THE DEFENDANT DEPRIVED OF A THIRD-PARTY DEFENSE? pp. 31-32

#8: WHETHER THE GOVERNMENT BREACHED THE DEFENDANT'S MOTION IN LIMINE TO EXCLUDE INFERENCE OF PRIOR BAD ACTS CREATED A MISCARRIAGE OF JUSTICE?

pp. 32-34

#9: WHETHER THE PROSECUTOR VOUCHED FOR THE CREDIBILITY OF THE VICTIM IN VIOLATION OF THE 6TH AND 14TH AMENDMENTS TO THE U.S. CONSTITUTION?

pp. 34-36

#10: WHETHER THE DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL AND ON DIRECT APPEAL?

pp. 36-42

STATEMENT OF THE CASE

THE DEFENDANT HAS COMPLETED HIS SENTENCE(S) UPON A PROPER RULING BY THE COURT.

THE DEFENDANT WAS GRANTED LEAVE BY THE APPEALS COURT FOR THE TRIAL COURT TO CONSIDER ANOTHER MOTION FOR NEW TRIAL, THIS TIME PURSUANT TO SUPERIOR COURT RULE 61A.

BASED ON THE INEFFECTIVENESS OF TRIAL AND APPELLATE COUNSEL, THE DEFENDANT IS FORCED TO PROVE BY A PREPONDERANCE OF THE EVIDENCE, HIS INNOCENCE FOR THE CRIMES CHARGED IN 1987. NEVERTHELESS, IF THE APPEALS COURT APPLIES THE SETTLED LAW, THE DEFENDANT WILL HAVE COMPLETED ALL SENTENCES AND WILL BE RELEASED FROM PRISON.

THE DEFENDANT FILED A MEMORANDUM OF LAW (IMBUED IN THE 61A) AND AN AFFIDAVIT IN SUPPORT OF MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE. (RECORD APPENDIX ("RA") 14-19)

THE MOTION COURT, BROWN, J., ON FEBRUARY 7, 2018, DENIED THE DEFENDANT'S MOTION. [RA 1-13]

THE DEFENDANT FILED A NOTICE OF APPEAL [RA 20] AND IS NOW PROPERLY BEFORE THIS COURT.

STATEMENT OF FACTS

ON FEBRUARY 18, 1987, THE COMPLAINING WITNESS ("CW") LIVED WITH HER CHILDREN AT 16 PINE STREET IN BROCKTON, THE FIRST-FLOOR APARTMENT OF A 3-FAMILY BUILDING.

AT 11:30 P.M., CW WAS WATCHING TELEVISION WHILE LYING ON THE COUCH IN THE PARLOR, DRESSED IN AN OLD NIGHTSHIRT, PAJAMA TOP AND UNDERWEAR. THERE WAS AN OVERHEAD LIGHT, COUPLED WITH THE LIGHT OF THE TELEVISION, ILLUMINATING THE ROOM AWAY FROM THE COUCH.

CW FELL ASLEEP WATCHING TELEVISION. SHE WAS AWAKENED BY A DRAFT FROM THE DOOR, SAW A MAN STANDING BETWEEN THE DOOR AND THE COUCH, ABOUT ONE FOOT FROM CW.

LOOKING AT THE PERPETRATOR FROM THE WAIST UP, CW SAW HIS FACE. THE PERPETRATOR HIT CW IN HER FACE,

climbed on top of her and tore her shirt open.

When the perpetrators body was directly over CW's body she was able to see the perpetrators face. Later CW gave a detailed description to the responding officer (Poskus) including his length of hair and color, approximate weight and age along with details of his face with no mention of facial hair.

CW testified at trial that the perpetrator looked like he needed a shave. She identified the defendant as the perpetrator in the courtroom during the trial.

Digressing, the perpetrator spoke to CW after he was on top her, stating it,s every girls fantasy to be raped. The perpetrator then tore open her shirt and ripped her under pants. He inserted his finger inside of her vagina, she tried to pull away but was unsuccessful. The perpetrator looked at a picture of her kids and asked if they werer hers. CW stopped her struggling and the perpetrator told CW to perform

ORAL SEX WHILE HIS KNEE WAS IN HER RIBS. THE PERPETRATOR FORCED HIS PENIS INTO HER MOUTH BY PULLING HER HAIR AT THE SAME TIME. THEN, HE EJACULATED, CAUSING CW TO VOMIT.

THE PERPETRATOR THEN CLIMBED OFF CW AND WAS LAST SEEN BY HER IN THE PARLOR. SHE WAS THEN SICK TO HER STOMACH. AWARE, NOW, THAT THE PERPETRATOR WAS GONE, CW TOOK HER CHILDREN OUT OF THE HOUSE AND ASKED A NEIGHBOR TO CALL THE POLICE.

WHEN THE POLICE ARRIVED, CW GAVE A GENERAL DESCRIPTION OF THE PERPETRATOR TO OFFICER POSKUS, BUT SHE BECAME HYSTERICAL AND NEEDED THE COMFORT OF HER MOTHER.

CW'S MOTHER WENT WITH HER TO THE BROCKTON HOSPITAL WHERE SHE WAS EXAMINED AND TREATED. A PHOTO OF CW'S INJURIES TO HER FACE AND ALSO HER CLOTHING WAS EVIDENCE AT THE CRIMINAL TRIAL.

CW TOLD HER MOTHER AS SHE DESCRIBED THE PERPETRATOR SHE WOULD NEVER FORGET THAT FACE.

The NEXT AFTERNOON. CW MET WITH BROCKTON POLICE AND LOOKED AT PHOTOGRAPHS IN A 1000 PAGE PICTURE BOOK, ALL WHITE MEN, NO SPANISH. THE DEFENDANT'S FACE WAS NOT CONTAINED IN THE BOOK SHOWN AS HE HAD NO PRIOR CRIMINAL RECORD. THEN CW AND DETECTIVE LAGARDE PUT TOGETHER A COMPOSITE SKETCH USING AN IDENTI-KIT.

NEXT DAY CW WAS SHOWN ANOTHER 500 PHOTOS IN WHICH SHE PICKED OUT A PHOTO OF A YOUNG MALE. SHE TOLD THE DETECTIVE THAT THE PHOTO LOOKED LIKE A YOUNGER VERSION OF THE MAN THAT HAD RAPED HER. CW STATED THAT THEY WERE THE SAME EYE'S, SAME NOSE AND SAME MOUTH. THE PHOTO WAS OF A JUVENIAL WHO WAS 14 AT THE TIME THE PHOTO WAS TAKEN BUT WAS NOW IN HIS TWENTIES.

ON THE DATE THE DEFENDANT WAS ARRESTED ON A DIFFERENT MATTER CW WAS PRESENTED AN 8 PHOTO ARRAY AND TOLD THAT WE HAVE A NEW SUSPECT. THE DEFENDANTS NEW POLAROID PHOTO WAS LAYED OUT ALONG WITH SEVEN OLD PHOTOS, SOME WITH POLICE MARKINS,CW PICKED OUT THE DEFENDANT AS THE PERPETRATOR.

IT WAS STATED AT TRIAL BY CW AND THE DETECTIVE THAT THE DEFENDANT "LOOKED DIFFERENT" AT

TRIAL, AS HE HAD A MUSTACHE, AND A BEARD, COMPARED TO THE PERPETRATOR AT THE TIME OF THE CRIME. THE PERPETRATOR WAS NOTED AS "NEEDING A SHAVE."

THE FINAL WITNESS FOR THE COMMONWEALTH WAS SHARON CHACE. CHACE TESTIFIED SHE SAW THE DEFENDANT ON MARCH 25, 1987 IN THE EVENING FOR 45 MINUTES, WHICH ALLOWED HER TO IDENTIFY HIM IN COURT.

CHACE TESTIFIED THAT THE DEFENDANT HAD LONG HAIR, SHOULDER-LENGTH, AND THAT HE HADN'T SHAVED FOR A COUPLE OF DAYS.

AFTER LOOKING AT A PHOTO OF THE DEFENDANT, WHICH WAS INTRODUCED INTO EVIDENCE AT TRIAL, CHACE STATED THE DEFENDANT HAD LESS HAIR ON HIS FACE ON MARCH 25, 1987 THAN THAT SHOWN IN THE PHOTO. TAKIN ON MARCH 31st 1987.

THE DEFENDANT'S COUNSEL MOVED FOR A REQUIRED FINDING OF NOT GUILTY AT THE CLOSE OF THE COMMONWEALTH'S CASE. THE MOTION WAS DENIED, DEFENDANT'S RIGHTS SAVED.

FORCED TO PRESENT A DEFENSE, THE DEFENDANT PRODUCED THREE WITNESSES AND TESTIFIED IN HIS OWN BEHALF THAT HE HAD A WELL-GROOMED MUSTACHE AND BEARD, THAT HE WAS SEEN AT LEAST ONCE A WEEK FROM OCTOBER 1986 THROUGH SPRING 1987 WITH HIS APPEARANCE SIMILAR TO THAT AT TRIAL, EXCEPT HIS BEARD WAS SLIGHTLY SHORTER. THE DEFENDANT WAS CONVICTED OF ALL THREE CHARGES.

SUMMARY OF THE ARGUMENTS

#1 WHETHER THE DEFENDANT WAS ENTITTLED TO A PRE-TRIAL CONFERENCE ON THE CONCESSION OF THE CRIMES BY THE JUDGE THE FAILURE OF WHICH WAS A STRUCTURAL DEFECT IN THE TRIAL PROCESS.

VARIOUS COURTS, INCLUDING THE TRIAL COURTS, AND THE APPEALS COURT, HAVE CLAIMED THE PRETRIAL CONFERENCE IS NOT A CRITICAL STAGE OF THE CRIMINAL PROCEEDINGS.

THE ORIGINAL FLORIDA CRIMINAL PROCEDURE, FROM WHICH RULE 11 WAS ADAPTED, INCLUDED THE DEFENDANT AS A PARTICIPANT AT THE PRETRIAL CONFERENCE. SOMEHOW, OVER A PERIOD OF TIME, THE COURT, DECIDED THE PRETRIAL CONFERENCE IS "NO BIG DEAL"

FOR THE DEFENDANT.

THE TRIAL JUDGES CONCESSION TO THE JURY THAT THE BURGLARY ASSAULT, AND RAPE HAD BEEN COMMITTED RELIEVED THE COMMONWEALTH OF ITS BURDEON OF PROOF, THUS DENIENG THE DEFENDANT OF A CRUCIAL ELEMENT OF A FAIR TRIAL.

THIS ACTION SERIOUSLY AFFECTED THE REQUIRED FINDING OF NOT GUILTY HEARING UNDER RULE 25(a) HELD DURING THE TRIAL AS WELL.

pp. 19-20

#2: WHETHER THE COURT WAS REQUIRED TO DISMISS THE LESSER INCLUDED OFFENSE OF AGGRAVATED RAPE BECAUSE IT WAS AN ELEMENT OF THE CRIME OF AGGRAVATED BURGLARY?

WHAT IS THE DIFFERENCE BETWEEN FELONY-MURDER AND FELONY-BURGLARY, OR FELONY-RAPE?

THE COURTS HAVE ALLOWED THE PROSECUTOR A FREEDOM OF EXPRESSION WHICH SUPERCEDES CONSTITUTIONAL RIGHTS. THIS IS AN ABUSE OF DISCRETION.

ATTORNEYS DO NOT CATCH THIS AT THE PROBABLE CAUSE STAGE, THAT A CLIENT MAY BE "OVERCHARGED."

IF THE FELONY IN A FELONY-MURDER IS RAPE, MULTIPLE PUNISHMENTS MAY NOT BE IMPOSED, BASED ON THE ELEMENTS OF THE CRIME.

IF THE ELEMENTS OF A CRIME NECESSARILY INCLUDE A SEPARATE ENHANCING CRIME, UPON CONVICTION, THE UNDERLYING ELEMENT MUST BE DISMISSED UNDER THE DOUBLE JEOPARDY CLAUSE.

PP. 20-23

#3: WHETHER THE DEFENDANT SHOULD HAVE BEEN NOTIFIED THE COMMONWEALTH WOULD BE RELIEVED OF ITS BURDEN TO PROVE EVERY ELEMENT OF THE CRIMES CHARGED BEYOND A REASONABLE DOUBT?

THE COMMONWEALTH OF MASSACHUSETTS HAS THE BURDEN OF PROOF ON EACH AND EVERY ELEMENT OF THE CRIME CHARGED BEYOND A REASONABLE DOUBT.

DUE PROCESS DEMANDS THAT THE COMMONWEALTH IS SADDLED WITH THIS CONSTITUTIONAL CHORE THROUGHOUT THE CRIMINAL PROCESS FROM ARRAIGNMENT TO SENTENCE.

TRIAL COUNSELS FAILURE TO OBJECT THAT THE COMPLAINING WITNESS WAS BURGLARIZED, ASSAULTED OR RAPED WHEN CONCEEDED BY THE JUDE MEANT THE COMMONWEALTH WAS RELIEVED OF ITS BURDEN TO PROVE EVERY ELEMENT OF THE CHARGED ACTS. THIS ACTION AUTOMATICLY PUTS THE BURDEN OF PROOF ON THE DEFENDANT TO REFUTE THE CONCESSION. IF HIS ATTORNEY IS IN ON IT HOW DOES THE DEFENDANT ACCOMPLISH THIS FEAT OR GET A FAIR TRIAL. AN IRREBUTTABLE CONCESSION WHICH PLACES THE BURDEN OF PROOF ON THE DEFENDANT IS UNCONSTITUTIONAL.

#4: WHETHER THE LOSS OF KEY EVIDENCE IN THE CASE BY THE GOVERNMENT DENIED THE DEFENDANT DUE PROCESS ON DIRECT APPEAL AND COLLATERAL REVIEW, WHERE TESTS WOULD PROVE HIS INNOCENCE?

THE COMMONWEALTH IS REQUIRED TO KEEP IN ITS POSSESSION ANY EXCULPATORY EVIDENCE WHICH MAY SHOW THE DEFENDANT COULD NOT HAVE BEEN THE PERPETRATOR OF THE CRIMES FOR WHICH HE WAS CHARGED.

AFTER DIRECT APPEAL IS PROCESSED, ESPECIALLY WHERE APPELLATE COUNSEL DID NOT INVESTIGATE THE EVIDENCE, A MOTION FOR NEW TRIAL IS CONSTITUTIONALLY

PROVIDED, WHERE A DEFENDANT, WITH OR WITHOUT AN ATTORNEY, MAY PRESENT EVIDENCE NOT SEEN BEFORE BY A REVIEWING COURT.

IF THE EVIDENCE IS WITHHELD BY THE COMMONWEALTH, AT SOME POINT IT MAY BE RECOVERED FOR A PROPER ADJUDICATION.

HERE, THE COMMONWEALTH HAD THE EVIDENCE DESTROYED. [RA 38]

pp. 25-26

#5: WHETHER THE IDENTIFICATION OF THE DEFENDANT ONE-ON-ONE WITH THE GOVERNMENT WAS SUGGESTIVE IN VIOLATION OF THE 14TH AMENDMENT?

WHO DOES THIS COURT TRUST?

A GOVERNMENT OFFICIAL, WHO IS A DETECTIVE FOR THE BROCKTON POLICE, 30 DAYS AFTER THE CRIMES HAD OCCURRED, MADE ARRANGEMENTS TO GET TOGETHER ONE-ON-ONE, WITH THE COMPLAINING WITNESS. THE DEFENDANT HAD JUST BEEN ARRESTED FOR A DIFFERENT CRIME.

THE DETECTIVE BROUGHT A PHOTO ALBUM OF 8 PICTURES OF WHITE MALES BETWEEN THE AGES OF 16-30 TO THE HOME OF THE COMPLAINING WITNESS. WHEN HE OPENED THE ALBUM TO PUT IT ON THE TABLE, IT OPENED TO THE PAGE WHERE THE DEFENDANT'S PICTURE WAS KEPT.

COUNSEL SHOULD HAVE TRIED TO HAVE THE PROCEDURE EXAMINED AND THE IDENTIFICATION SUPPRESSED..

PP. 26-29

#6: WHETHER THE DEFENDANT WAS DENIED AN ALIBI INSTRUCTION TO THE JURY WHERE HIS ATTORNEY FAILED TO NOTIFY THE GOVERNMENT OF THE DEFENDANT'S ALIBI?

THE DEFENDANT WAS SAFELY AT HIS BROTHER'S HOUSE WHEN THE CRIME WENT DOWN. WHERE WAS HIS BROTHER WHEN THE TRIAL WAS PROCEEDING? UNKNOWN, NEVER CALLED BY THE ATTORNEY.

THE DEFENDANT SUBMITTED AN AFFIDAVIT TO SUPPORT HIS ALIBI CLAIM.

THE COURT DUNNED THE DEFENDANT FOR AN AFFIDAVIT FROM HIS ATTORNEY. ABSENT A CONTROVERTING AND DISPUTING AFFIDAVIT FROM THE COMMONWEALTH,

THE DEFENDANT'S AFFIDAVIT IS TOTALLY EVIDENCE, NOT TO BE REJECTED BY THE COURT OUT OF HAND.

THE RULES OF COURT FOR POST-CONVICTION SUBMISSIONS FOR A NEW TRIAL DO NOT REQUIRE AN AFFIDAVIT FROM THE DEFENDANT'S ATTORNEY.

THIS APPEARS TO BE A "MADE UP" PREJUDICIAL EDICT, JUST ANOTHER WAY OF NOT HAVING TO APPLY SETTLED LAW TO INDIVIDUALLY "CHOSEN" CASES.

pp. 29-30

#7: WHETHER THE GOVERNMENT'S FAILURE TO INVESTIGATE THE CRIME SCENE OF OTHER PERPETRATORS, WAS THE DEFENDANT DENIED THIRD-PARTY DEFENSE?

THE COMPLAINING WITNESS'S APARTMENT MUST HAVE SOME EVIDENCE OF A CRIME?

WERE THERE FINGERPRINTS? WERE THERE BIOLOGICAL EVIDENCE FOUND AND TAKEN FOR ANALYSIS BY THE CRIME SCENE INVESTIGATORS? NO.

THE COMPLAINING WITNESS TESTIFIED SHE VOMITED DURING THE CRIME. SHE TESTIFIED THAT ONLY THE

TELEVISION WAS ON AT THE TIME OF THE CRIME.

NO LIGHTING TESTS WERE DONE BY THE COMMONWEALTH OR THE DEFENSE.

THE COURT SHOULD HAVE INSTRUCTED THE JURY THERE MAY HAVE BEEN A THIRD PARTY INVOLVED BASED ON THE LACK OF ANY CRIME SCENE INVESTIGATION BY THE GOVERNMENT, WHICH IS A RIGHT THE DEFENDANT HAS UNDER THE ALL PROOFS DOCTRINE OF ARTICLE 12.

pp.31-32

#8: WHETHER THE GOVERNMENT BREACHED THE DEFENDANT'S MOTION IN LIMINE TO EXCLUDE INFERENCES OF PRIOR BAD ACTS CREATED A MISCARRIAGE OF JUSTICE?

THE DEFENDANT'S ATTORNEY FILED A MOTION IN LIMINE TO EXCLUDE CHARACTER EVIDENCE, INCLUDING PRIOR BAD ACTS.

A WITNESS FOR THE COMMONWEALTH TESTIFIED SHE HATED THE DEFENDANT FOR GOOD REASON.

THE JURORS DID NOT HAVE TO BE ROCKET SCIENTISTS

TO FIGURE OUT TO WHAT THE WITNESS WAS ALLUDING, THAT THIS GUY DID TO ME WHAT HE DID TO HER. HER PROPER TESTIMONY WAS TO BE ABOUT THE DEFENDANTS APPEARENCE ON MARCH 25th WHEN SHE MET HIM, ONE MONTH AFTER THE CRIME FOR WHICH THE DEFENDANT WAS ON TRIAL FOR. THIS TESTIMONY HAD NO BEARING ON THE WAY THE DEFENDANT LOOKED ON THE NIGHT OF THE OFFENSE AND THEREFOR SHOULD NOT HAVE BEEN ALLOWED. THIS TESTIMONY WAS USED STRICTLY TO BOLSTER THE COMMONWEALTHS CASE.

THIS WITNESSES TESTIMONY WAS SO PREJUDICIAL IT COULD NOT BE OVERCOME ON CROSS EXAMINATION

DD. 32-34

#9: WHETHER THE PROSECUTOR VOUCHED FOR THE CREDIBILITY OF THE VICTIM IN VIOLATION OF THE 6TH AND 14TH AMENDMENTS TO THE U.S. CONSTITUTION?

COULD THE PROSECUTOR "GET AWAY WITH" VOUCHING FOR THE CREDIBILITY OF THE COMPLAINING WITNESS BECAUSE THE TRIAL TOOK PLACE IN 1987?

"HE'S THE GUY WHO DID IT," IS THE SAME AS "HE'S GUILTY!" THAT WAS THE PROSECUTOR'S PERSONAL OPINION IN HIS CLOSING ARGUMENT.

HOW CAN THIS COURT ABIDE BY KEEPING AN INNOCENT MAN IN PRISON BECAUSE HIS ATTORNEY(S) FAILED SO MISERABLY?

THE PROSECUTOR MAY HAVE JUST REPEATED THE COMPLAINING WITNESS'S OPINION BUT HE ADOPTED IT AS HIS OWN, WHICH IS WHAT THE JURORS HEARD. THIS CONVICTION CANNOT STAND ON THE PROSECUTOR VOUCHING FOR HIS WITNESS, ESPECIALLY WHERE THE COMMONWEALTH'S BURDEN OF PROOF WAS SO LOWERED BY DEFENSE ATTORNEY'S UNCONSTITUTIONAL STIPULATION THAT A CRIME OCCURRED.

THE DEFENDANT MUST BE GRANTED A NEW TRIAL ON THIS ISSUE ALONE.

pp. 34-36

#10: WHETHER THE DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL AND ON DIRECT APPEAL?

MR. JOHN YUNITS, THE TRIAL ATTORNEY, WAS INEFFECTIVE AS A MATTER OF LAW, WHEN THE COURT RULES HE WAS LESS THAN A PROPER REPRESENTATIVE OF THE DEFENDANT.

HIS FAILURES TO INVESTIGATE, HIS FAILURE TO HOLD THE COMMONWEALTH'S FEET TO THEIR BURDEN OF PROOF (FIRE)...

MR. YUNITS EXCLUDED HIS CLIENT FROM A CRITICAL STAGE OF THE CRIMINAL PROCEEDINGS WHERE HE MADE A MAJOR STIPULATION WITHOUT THE DEFENDANT'S KNOWLEDGE.

HIS APPELLATE COUNSEL RAISED NONE OF THESE SO-CALLED "WAIVED" CLAIMS WHICH APPEAR TO BE PRIMA FACIE OF THE INEFFECTIVENESS OF APPELLATE COUNSEL.

THE DEFENDANT MUST NOW BE GRANTED A NEW TRIAL.

PP. 36-42

LEGAL ARGUMENTS

ISSUE #1:

WHETHER THE DEFENDANT WAS INTITLED TO ATTEND THE PRETRIAL CONFERENCE, THE FAILURE OF WHICH WAS A STRUCTURAL DEFECT IN THE TRIAL PROCESS?

THIS WAS NOT A"TRIAL ERROR." ARIZONA V. FULMINANTE, 499 U.S. 279, 310 (1991) A TRIAL ERROR IS "SIMPLY AN ERROR IN THE TRIAL PROCESS" AND THUS PROPERLY SUBJECT TO HARMLESS ERROR REVIEW BECAUSE IT DOES NOT NECESSARILY CALL FUNDAMENTAL FAIRNESS OF THE TRIAL INTO QUESTION.

STRUCTURAL ERRORS AS IN THE ONE HERE, ARE DEFECTS THAT FUNDAMENTALLY UNDERMINE THE RELIA-

BILITY AND FAIRNESS OF THE THE CRIMINAL PROCEEDINGS CAN NEVER BE FOUND TO HAVE BEEN "HARMLESS," FULMINANTE, 499 U.S. at 310, AND TO DETERMINE WHETHER AN ERROR IS STRUCTURAL, COURTS "MUST LOOK NOT ONLY AT THE RIGHT VIOLATED, BUT ALSO AT THE PARTICULAR NATURE, CONTEXT, AND SIGNIFICANCE OF THE VIOLATION." UNITED STATES V. GONZALEZ, 110 F.3D 936, 946 (1997); YARBOROUGH V. KEANE, 101 F.3D 894, 897 (1996); UNITED STATES V. HARBIN, 250 f.3D 532, 544 (2001)(STRUCTURAL ERRORS ARE PRESUMPTIVELY PREJUDICIAL). THE JUDGES CONCESSION OF THE CRIMES TO THE JURY WAS STRUCTURAL ERROR AND THEREFOR PREJUDICIAL.

IN NORDE V. KEANE, 294 F.3d 401, 414(2002) IT WAS HELD THAT DENIAL OF COUNSEL EVEN TEMPORARILY DURING THE CRITICAL STAGE OF A TRIAL IS NOT SUBJECT TO HARMLESS ERROR ANALYSIS. THE FAILURE OF COUNSEL TO OBJECT DENIED THE DEFENDANT OF COUNSEL AT A CRITICAL STAGE DUE TO ITS UNDERLYING CONSEQUENCES.

BECAUSE THE DEFENDANT HAS THE CONSTITUTIONAL RIGHT TO BE AND HAVE A PRE-TRIAL HEARING IN WHICH CRITICAL ISSUES FOR TRIAL ARE TO BE WAIVED THAT ARE PROTECTED BY THE CONSTITUTION THE FAILURE TO DO SO DENIED THE DEFENDANT OF A FAIR TRIAL. The ~~con~~ CONVICTION MUST BE VACATED AND A NEW TRIAL ORDERED.

ISSUE 2

WHETHER the court was required to dismiss

THE LESSER INCLUDED OFFENS OF AGGRAVATED RAPE BECAUSE IT WAS AN ELEMENT OF THE CRIME OF AGGRAVATED BURGLARY?

WHERE THE PREDICATE FELONY IN THIS CASE WAS AGGRAVATED BURGLARY AND THE RAPE CHARGE WAS A NECESSARY ELEMENT TO AGGRAVATE THAT BURGLARY, THE RAPE IS A LESSER-INCLUDED OFFENSE.

IN UNITED STATES V. SHEA, 211 F.3D 658, 673 (2000), DOUBLE JEOPARDY BARRED CUMULATIVE PUNISHMENT FOR BEING FELON-IN-POSSESSION OF FIREARM AND BEING DRUG USER IN POSSESSION OF FIREARM DESPITE EACH INVOLVING DIFFERENT ELEMENT(S) BECAUSE CONGRESS DID NOT INTEND TO INFLICT MULTIPLE PUNISHMENT(S).

IN WHALEN V. UNITED STATES, 445 U.S. 684, 693-697 (1980) MULTIPLE PUNISHMENTS NOT AUTHORIZED BY CONGRESS AND MAY NOT BE IMPOSED BECAUSE RAPE IS LESSER-INCLUDED OFFENSE OF FELONY-MURDER IN COURSE OF RAPE.

HERE, IT WAS AGGRAVATED (FELONY) BURGLARY AS THE RAPE WAS USED BY THE GOVERNMENT TO "AGGRAVATE" THE BURGLARY. AT THE SAME TIME, THE STATE

USED THE BURGLARY TO "AGGRAVATE" THE RAPE.

SEE, WILLIAMS V. SINGLETARY, 78 F.3D 1510, 1516 (1996), WHERE DOUBLE JEOPARDY BARS CUMULATIVE CONVICTIONS AND SENTENCES FOR ASSAULT AND BURGLARY WITH AN ASSAULT BECAUSE NO CLEAR LANGUAGE IN THE STATE STATUTE AND NO INDICATION FROM THE STATE COURTS OR THE LEGISLATURE AS TO THE PROPER INTERPRETATION OF THE STATE LAW.

HERE, THE STATUTE, G.L. C. 266 §14, "WHOEVER BREAKS AND ENTERS A DWELLING HOUSE IN THE NIGHT TIME, WITH INTENT TO COMMIT A FELONY..." "NO LESS THAN 10 YEARS." [AMENDED BY ST. 1966, c. 330 ]

ACCORDING TO THE STATUTE, THIS WAS A FELONY-BURGLARY (AGGRAVATED BY THE UNDERLYING FELONY).

ON THE OTHER HAND, UNDER G.L. C. 265 §22(a), "OR IS COMMITTED DURING THE COMMISSION OF SECTION FOURTEEN...OF CHAPTER TWO HUNDRED AND SIXTY-SIX ..." SO, THAT IS FELONY-RAPE, WITH THE AGGRAVATING FACTOR BEING THE BURGLARY, BOTH ELEMENTS

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH SS. SUPERIOR COURT

No. 84018-84019
84057-84058

Commonwealth v. Dutcher,

AFFIDAVIT IN SUPPORT OF MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

I, John E. Dutcher, do hereby depose and state the following to be true:

1. I have read the official record which states that the PreTrial Conference was held on July 6, 1987.

2. I was not notified, nor was I allowed to attend the PreTrial Conference as on July 6, 1987 I was in the house of correction awaiting trial.

3. If I had been at the PreTrial Conference I would not have allowed my attorney to stipulate that crimes actually occurred and would have demanded the Commonwealth to prove each and every element of the crimes charged beyond a reasonable doubt.

4. If I had been at the PreTrial Confernce, I would have received and subsequently studied all the discovery for the case presented by the Commonwealth in order to make a defense.

OF EACH OTHER, AND BOTH LESSER-INCLUDED OFFENSES, BY STATUTE, OF THE OTHER.

CLEAR AND UNAMBIGUOUS LANGUAGE IN A STATUTE IS CONCLUSIVE AS TO THE LEGISLATURE'S INTENT. COMMISSIONER OF CORRECTION V. SUPERIOR COURT DEPT. OF THE TRIAL COURT FOR THE COUNTY OF WORCESTER, 446 MASS. 123, 124 (2006)

ISSUE #3:

WHETHER THE DEFENDANT SHOULD HAVE BEEN NOTIFIED THE COMMONWEALTH WOULD BE RELIEVED OF ITS BURDEN TO PROVE EVERY ELEMENT OF THE CRIMES CHARGED BEYOND A REASONABLE DOUBT?

JOHN YUNITS, TRIAL COUNSEL, WITHOUT THE DEFENDANT'S KNOWLEDGE, OR APPROVAL, STIPULATED THAT CW'S HOUSE WAS BURGLARIZED, THAT SHE WAS ASSAULTED AND RAPED. [RA 14, ¶3]

THIS STIPULATION SHIFTED THE BURDEN OF PROOF TO THE DEFENDANT. UNDER THE DUE PROCESS CLAUSE OF THE 5TH AMENDMENT, THE PROSECUTOR IS REQUIRED TO PROVE BEYOND A REASONABLE DOUBT EVERY

ELEMENT OF THE CRIME(S) WITH WHICH THE DEFENDANT WAS CHARGED. IN RE WINSHIP, 397 U.S. 358, 364 (1970)

THE COMMONWEALTH MAY NOT RELIEVE THE PROSECUTION OF ITS BURDEN OF PROOF BY REQUIRING THE DEFENDANT TO USE AN AFFIRMATIVE DEFENSE TO NEGATE AN ESSENTIAL ELEMENT OF THE CRIME. MULLANEY V. WILBUR, 421 U.S. 684, 703-704 (1975)

TRIAL ATTORNEY YUNITS' STIPULATION AT THE PRETRIAL CONFERENCES, FROM WHICH THE DEFENDANT WAS EXCLUDED [RA 14-15 ] CREATED THE IRREBUTTABLE PRESUMPTION THAT THE CRIMES HAD OCCURRED, DID'NT NEED TO BE PROVEN, AND UNDERMINED THE JURY'S FACT-FINDING RESPONSIBILITY TO PINPOINT THE ELEMENTS OF A CRIME BEYOND A REASONABLE DOUBT. MULLANEY, 421 U.S. 702 [N.31]; ANDERSON V. BUTLER, 23 F.3D 593, 595 (1994)

BY LAW, THE JURY WOULD HAVE HAD TO INDEPENDENTLY ASSESS THE EVIDENCE. COUNTY COURT V. ALLEN, 442 U.S. 140, 156 (1979) THE PRESUMPTION THAT THE BURGLARY, ASSAULT, AND RAPE HAD OCCURRED WAS A MANDATORY ONE. (ID., AT 157)

ISSUE #4:

WHETHER THE LOSS OF KEY EVIDENCE IN THE CASE BY THE GOVERNMENT DENIED THE DEFENDANT DUE PROCESS ON DIRECT APPEAL AND COLLATERAL REVIEW WHERE TESTS WOULD PROVE HIS INNOCENCE?

THIS IS PROSECUTORIAL MISCONDUCT AT ITS WORST. THE VERY EVIDENCE NEEDED TO EXONERATE THE DEFENDANT WAS LOST/DESTROYED BY THE COMMONWEALTH. [RA 4]

A STRUCTURALLY-DEFECTIVE DISCOVERY ERROR OCCURS WHEN THE GOVERNMENT WITHHOLDS MATERIAL FAVORABLE EVIDENCE AND THERE IS A REASONABLE PROBABILITY THAT TESTING THE EVIDENCE WOULD HAVE ALTERED THE RESULT OF THE TRIAL. BRADY MARYLAND, 373 U.S. 83, 87 (1963)

SEE UNITED STATES V. LLOYD, 71 F.3D 408, 411 (1995) WHERE THERE WAS A NEW TRIAL MOTION , BASED ON EVIDENCE WITHHELD IN VIOLATION OF BRADY WHICH COULD NOT BE DENIED ON THE BASIS THAT A NEW TRIAL WOULD NOT HAVE PRODUCED A DIFFERENT OUTCOME, AS SUCH VIOLATIONS ARE NOT SUBJECT TO HARMLESS ERROR ANALYSIS. BANKS V. DRETKE, 540 U.S. 668 (2004)

THE TESTIMONY BY CW THAT SHE VOMITED AFTER THE PERPETRATOR EJACULATED IS CONCLUSIVE OF THE CLOTHING BEING MATERIAL EVIDENCE UNDER UNITED STATES V. BAGLEY, 473 U.S. 667, 682 (1985)

ISSUE #5:

WHETHER THE IDENTIFICATION OF THE DEFENDANT ONE-ON-ONE WITH THE GOVERNMENT WAS SUGGESTIVE IN VIOLATION OF THE 14TH AMENDMENT?

ANY DEFENDANT IN A CRIMINAL CASE MUST RELY ON DUE PROCESS PRINCIPLES TO CHALLENGE UNNECESSARILY SUGGESTIVE PROCEDURES THAT OCCUR AT NONCRITICAL PRETRIAL STAGES. IN STOVALL V. DENNO, 388 U.S. 293, 302 (1967) THE SUPREME COURT RECOGNIZED A DEFENDANT'S DUE PROCESS RIGHT TO EXCLUDE IDENTIFICATION TESTIMONY THAT RESULTS FROM UNNECESSARILY SUGGESTIVE PROCEDURES THAT MAY LEAD TO IRREPARABLY MISTAKEN IDENTIFICATION.

IN NEAL V. BIGGERS, 409 U.S. 188, 198 (1972) THE SUPREME COURT FURTHER EXPLAINED THAT IT'S

THE LIKELIHOOD OF MISIDENTIFICATION WHICH VIOLATES A DEFENDANT'S RIGHT TO DUE PROCESS. HERE, THE POLICE DETECTIVE TESTIFIED HE WENT TO CW'S HOME WITH A PHOTO ARRAY OF EIGHT PHOTOGRAPHS, ONE OF WHICH WAS THE DEFENDANT.

THERE WERE ONLY TWO PERSONS PRESENT AT THIS "IDENTIFICATION EVENT." THIS IDENTIFICATION SHOULD HAVE BEEN SUPPRESSED AS IMPROPER AND SUGGESTIVE.

THERE WAS NO TESTIMONY THAT THE 8 PHOTOS WERE "SIMILAR" TO THE DEFENDANT'S PHOTO, AND HOW MANY DISSIMILAR? UNITED STATES V. DECOLOGERO, 530 F.3D 36, 62 (2008) NOT ONLY THAT, THIS "IDENTIFICATION EVENT" WAS CONDUCTED MORE THAN 30 DAYS AFTER THE CRIMES WERE COMMITTED. MANSON V. BRATHWAITE, 432 U.S. 98, 114-116 (1977) HERE ALSO, CW PICKED OUT A DIRRERENT PERSON AT A DIFFERENT TIME. SEE, ABDUR RAHEEM V. KELLY, 257 F.3D 122, 138 (2001)

THE DEFENDANT'S COUNSEL, JOHN YUNITS, WAS INEFFECTIVE FOR FAILING TO MOVE THE COURT FOR A SUPPRESSION HEARING BEFORE TRIAL.

THAT THE DEFENDANT HAD THE CONSTITUTIONAL RIGHT TO BE INFORMED OF THE (SUGGESTIVE) IDENTIFICATION PROCEDURE CONDUCTED IN A PRIVATE SESSION BETWEEN DETECTIVE LAGARDE AND CW IS SETTLED MASSACHUSETTS LAW. COMMONWEALTH V. DOUGAN, 377 MASS. 303 (1979)

COUNSEL WAS INEFFECTIVE FOR NOT INVESTIGATING THIS "IDENDITICATION EVENT," BUT WAITED UNTIL TRIAL TO HEAR THE DETAILS. KIMMELMAN V. MORRISON, 477 U.S. 365 (1986) MR. YUNITS WAS ALSO INEFFECTIVE BECAUSE HE MADE NO EFFORT TO SUPPRESS THIS SUGGESTIVE IDENTIFICATION.

IT WOULD HAVE HAD TO HAVE BEEN SHOWN BY THE GOVERNMENT THE PHOTO IDENTIFICATTON PROCEDURE WAS CONDUCTED FROM AN INDEPENDENTLY NEUTRAL SOURCE, WITH NO BIAS IN THE SETTING. COMMONWEALTH V. JOHNSON, 420 MASS. 458 (1995)

THE COURT, AT TRIAL, SHOULD HAVE HELD A SUPPRESSION VOIR DIRE HEARING BECAUSE MR. YUNITS' CROSS-EXAMINATION BROUGHT OUT THE FACTS ANENT THE

SUGGESTIVE PROCEDURE BUT THE JURORS WOULD NOT KNOW THE LAW ON SUGGESTIVENESS, NO MATTER THE WITNESSES' TESTIMONY. WATKINS V. SANDERS, 449 U.S. 341, 347 (1981); UNITED STATES V. ORETO, 37 F.3D 739, 746 (1994)

ISSUE #6:

WHETHER THE DEFENDANT WAS DENIED AN ALIBI INSTRUCTION TO THE JURY WHERE HIS ATTORNEY FAILED TO NOTIFY THE GOVERNMENT OF THE DEFENDANT'S ALIBI DEFENSE?

"[C]ONSPICUOUSLY ABSENT IS AN AFFIDAVIT FROM TRIAL COUNSEL OR ANY EXPLANATION FOR DEFENDANT'S FAILURE TO INCLUDE ONE IN THE RECORD." HERE'S AN EXPLANATION: NOWHERE IN SUPERIOR COURT RULE 61A OR MASS.R.CRIM.P. 30(b) IS THE DEFENDANT REQUIRED TO SUBMIT AN AFFIDAVIT FROM HIS FORMER COUNSEL. THE RULES OF COURT HAVE THE FORCE OF LAW, AND MAY NOT BE IGNORED BY AN INDIVIDUAL JUDGE. EMPIRE APTS. INC. V. GRAY, 353 MASS. 604, 606 (1985); COMMONWEALTH V. BROWN, 395 MASS. 604 (1985)

ASSUMING ANY AND ALL AFFIDAVITS ARE PRETTY MUCH SELF-SERVING, THE DEFENDANT SWORE UNDER THE

PAINS AND PENALTIES OF PERJURY THAT ON THE NIGHT OF THE CRIMES"I WAS OVER TO MY BROTHER'S HOME IN BROCKTON."[RA 17 ¶20] THE COURT, BROWN,J., ABUSED ITS DISCRETION BY HOLDING AN AFFIDAVIT FROM COUNSEL WAS REQUIRED. [RA 6 ]

THE DEFENDANT'S ATTORNEY WAS INEFFECTIVE FOR NOT NOTIFYING THE PROSECUTOR AT THE PRETRIAL CONFERENCE THE DEFENDANT HAD AN ALIBI. ALTHOUGH THE COMMONWEALTH BEARS THE BURDEN OF PROVING EACH STATUTORY ELEMENT OF THE CHARGED OFFENSE, THE BURDEN OF PROVING AFFIRMATIVE DEFENSES IS SHIFTED TO THE DEFENDANT. UNITED STATES V. PETTY, 132 F.3D 373, 378 (1997)

THE COMMONWEALTH MAY NOT RELIEVE THE PROSECUTION OF ITS BURDEN OF PROOF BY REQUIRING THE DEFENDANT TO USE AN AFFIRMATIVE TO NEGATE AN ESSENTIAL ELEMENT OF THE CRIME, HERE THE IDENTITY OF THE PERPETRATOR IS THE DEFENDANT. THE COURT SHOULD HAVE INSTRUCTED THE JURY THE COMMONWEALTH HAS THE BURDEN TO PROVE "THE ABSENCE OF ALIBI." UNITED STATES V. DAVENPORT, 519 F.3D 940 (2008)

## ISSUE #7:

WHETHER THE GOVERNMENT'S FAILURE TO INVESTIGATE THE CRIME SCENE OF OTHER PERPETRATORS WAS THE DEFENDANT DENIED THIRD-PARTY DEFENSE?

THE CRIME-SCENE INVESTIGATORS (CSI) NEVER SHOWED UP AT THE CW'S HOME. THERE WERE NO REPORTS OF BIOLOGICAL EVIDENCE, NO FINGERPRINTS TAKEN, NO LUMINOL IMPRESSIONS. OF COURSE, IF THE COMMONWEALTH BELIEVED THAT DETECTIVE LEGARDE "ALREADY HAD HIS MAN," WHY SHOULD THE POLICE INVESTIGATE?

THERE WAS PROBABLE CAUSE TO INVESTIGATE THE CRIME SCENE AT CW'S HOME. COMMONWEALTH V. JACKSON, 23 MASS.APP.CT. 975 (1987) THIS FAILURE TO INVESTIGATE GOES TO THE CREDIBILITY OF THE GOVERNMENT ON ALL ASPECTS OF THE CRIME REGARDING PRECONCEIVED NOTIONS, SUGGESTIVE IDENTIFICATION, OTHER CRIMES AND/OR CRIMINALS IN THE AREA, ETC. COMMONWEALTH V. FLANAGAN, 20 MASS.APP.CT. 472 (1985)

THIS PROPOSES THE QUESTION OF WHETHER A JURY INSTRUCTION ON THE POLICE'S FAILURE TO INVESTIGATE COULD INFER GUILT, SHIFTING THE BURDEN

OF PROOF, OR, IN THE ALTERNATIVE, COULD INFER REASONABLE DOUBT. COMMONWEALTH V. REID, 29 MASS. APP.CT. 537 (1985) ARTICLE XII OF THE MASSACHUSETTS DECLARATION OF RIGHTS GIVES THE DEFENDANT THE RIGHT TO PRESENT A THIRD-PARTY DEFENSE BASED ON THE POLICE'S FAILURE TO CONDUCT A FORENSIC INVESTIGATION. COMMONWEALTH V. ROSA, 422 MASS. 18, 22 (1996)(ALL DOUBT MUST BE RESOLVED IN FAVOR OF GIVING THE INSTRUCTION)

ISSUE #8:

WHETHER THE GOVERNMENT BREACHED THE DEFENDANT'S MOTION IN LIMINE TO EXCLUDE INFERENCES OF PRIOR BAD ACTS CREATED A MISCARRIAGE OF JUSTICE?

AT THE PRETRIAL CHARGE CONFERENCE ATTORNEY YUNITS FILED A MOTION IN LIMINE TO EXCLUDE ALL INFERENCES OF PRIOR BAD ACTS. MASS. G. EVID. 404(b)

WITNESS SHARON CHACE, THE ALLEGED VICTIM IN A PENDING ASSAULT CASE CHARGED AGAINST THE DEFENDANT, TESTIFIED SHE HATED THE DEFENDANT "FOR GOOD REASON," AN INFERENCE HE MAY PREVIOUSLY HAVE

COMMITTED A CRIME AGAINST HER. [TR 2: 7]

SHARON CHACE'S TESTIMONY, WITHOUT A PROPER VOIR DIRE TO EXCLUDE PREJUDICIAL STATEMENTS COULD ONLY LEAD TO THE INFERENCE OF PRIOR BAD ACTS. COMMONWEALTH V. HELFANT, 398 MASS. 214, 224-225 (1986) HER TESTIMONY WAS NOT OFFERED AS PROOF OF MOTIVE, OPPORTUNITY, INTENT, PREPARATION, PLAN, KNOWLEDGE, NATURE OF RELATIONSHIP, OR ABSENCE OF MISTAKE OR ACCIDENT. COMMONWEALTH V. JULIEN, 59 MASS.APP.CT. 679, 686-687 (2003)

SHARON CHACE TESTIFIED SHE HATED THE DEFENDANT FOR SOUND REASON, THE COMMONWEALTH WAS PUSHING PRIOR BAD ACTS AT THE JURY. THE PROBATIVE VALUE OF SHARON CHACE'S "HATE" ATTRIBUTION TESTIMONY SUBSTANTIALLY PREJUDICED THE DEFENDANT. SEE, COMMONWEALTH V. BONDS, 445 MASS. 821, 824 (2006)

MR. YUNITS WAS INEFFECTIVE HERE BY NOT RE-QUESTING A SHORT, NO JURY, HEARING ON THE MATTER AND ALLOWING THE STATEMENTS ON CROSS-EXAMINATION.

NO LIMITING INSTRUCTION COULD HAVE SAVED THIS VIOLATION. COMMONWEALTH V. GOLLMAN, 51 MASS. APP. CT. 839, 945 (2001)

ISSUE #9:

WHETHER THE PROSECUTOR VOUCHED FOR THE CREDIBILITY OF THE VICTIM IN VIOLATION OF THE 6TH AND 14TH AMENDMENTS TO THE U.S. CONSTITUTION?

"...THINK ABOUT THAT ENCOUNTER WITH THIS MAN. (CW) WAS NOT AN INNOCENT BYSTANDER. THIS WAS NOT A NEUTRAL SETTING. THERE ARE CIRCUMSTANCES IN WHICH PEOPLE CAN LOOK YOU IN THE FACE FOR AN HOUR, AND IF YOU ASK THEM FIVE MINUTES LATER WHAT YOU LOOK LIKE, THEY COULDN'T TELL BECAUSE THEY HAVE NO REASON TO. THIS WAS A VERY UNIQUE SITUATION. (CW) HAD EVERY REASON TO REMEMBER WHAT HAPPENED TO HER AND WHAT THE PERSON LOOKED LIKE." [TR 2: 63-64]

"SO THE REAL QUESTION IS IS HE THE GUY WHO DIT IT? (CW) SAYS YES, HE IS. WHY SHOULD YOU BELIEVE HER? WHAT IS IT ABOUT HER TESTIMONY THAT WOULD LEAD YOU TO BELIEF IN YOUR MINDS AND IN

YOUR HEARTS THAT HE, JOHN DUTCHER, IS THE MAN WHO COMMITTED THESE CRIMES? [TR 2: 65 ]

"WE PUT (CW) UP ON THE STAND, AND SHE IDENTIFIED HIM IN THE COURTROOM. SHE HASN'T SEEN HIM SINCE THE NIGHT OF FEBRUARY 19th 1987. YET, SHE GOT UP THERE; AND WHEN I ASKED HER DO YOU SEE THAT MAN IN HERE, SHE POINTED TO HIM. SHE POINTED TO HIM DIRECTLY, WITHOUT ANY RESERVATIONS, WITHOUT ANY WAVERING; AND DESPITE CROSS-EXAMINATION SHE WASN'T SHAKEN." [TR 2: 70-71]

NOT ONLY IS MR. MURRAY VOUCHING FOR THE CREDIBILITY OF THE COMPLAINING WITNESS, HE IS EXPRESSING HIS PERSONAL OPINION AS TO THE TRUTHFULNESS, TOUGHNESS, AND PERSEVERENCE OF THE COMPLAINING WITNESS, IN VIOLATION OF SUPREME JUDICIAL COURT RULE 3:07, 3.8, 8.4: COMMONWEALTH V. KOZEC, 399 MASS. 514 (1987)

THE CUMULATIVE EFFECT OF MR. MURRAY'S BLATANT VOUCHING MUST VACATE THE CONVICTION. COMMONWEALTH V. DEMARS, 42 MASS.APP.CT. 788 (1997)

SEE ALSO, S.C., 426 MASS. 1008 (1998)

THE APPEALS COURT HELD IN COMMONWEALTH V. VILLALOBOS, 7 MASS.APP.CT. 905 (1979) THE DISTRICT ATTORNEY'S IMPROPER SUGGESTED PERSONAL KNOWLEDGE OF FACTS OF WHAT WAS IN THE WITNESS'S MIND WAS GROUNDS FOR A NEW TRIAL. ADA MURRAY'S PERSONAL OPINION CANNOT SUBSTANTIATE CW'S MENTAL CHARACTER FROM HER TESTIMONY. COMMONWEALTH V. WALKER, 442 MASS. 185, 197-199 (2004)

ISSUE #10:

WHETHER THE DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL AND ON DIRECT APPEAL?

FIRST, THE DEFENDANT'S ATTORNEY EXCLUDED HIM FROM THE PRE-TRIAL CONFERENCE. THIS MEANS FOR THAT PROCEDURE THE DEFENDANT WAS INCOMPETENT TO ASSIST IN HIS OWN DEFENSE. [RA 14] THE DEFENDANT'S "COMPETENCE" DEPENDS ON WHETHER HE "HAS SUFFICIENT PRESENT ABILITY TO CONSULT WITH HIS LAWYER WITH A REASONABLE DEGREE OF RATIONAL UNDERSTANDING AND WHETHER HE HAS A RATIONAL AS

WELL AS A FACTUAL UNDERSTANDING OF THE PROCEEDINGS AGAINST HIM. DUSKY V. UNITED STATES, 362 U.S. 402 (1960) THE DEFENDANT WAS DENIED "INTERACTION" WITH HIS ATTORNEY, UNITED STATES V. WIGGINS, 429 F.3D 31, 37 (1ST CIR. 2005), AND INCOMPETENT FOR THE PURPOSES OF ASSISTING IN HIS DEFENSE AT THE PRETRIAL CONFERENCE.

THERE WAS AN ATTEMPT TO EXCLUDE THE COMPOSITE DRAWING FROM THE IDENTIKIT BUT AN ATTEMPT TO SUPPRESS THE SUGGESTIVE IDENTIFICATION PROCEDURE ONE-ON-ONE AT CW'S HOME WITH JUST THE DETECTIVE LEGARDE PRESENT, WAS BEYOND MR. YUNITS' CAPACITY. G.L. C. 278 §28E WAS HIS DUTY.

THE DEFENDANT WAS PREJUDICED BY MR. YUNITS' LACK OF INVESTIGATION SKILLS. STRICKLAND V. WASHINGTON 466 U.S. 668, 687 (1984) MR. YUNITS FAILED TO MAKE HIMSELF FAMILIAR WITH HIS CLIENT'S CASE, JUST THAT "MY CLIENT IS NOT THE GUY" DEFENSE. THE DEFENDANT HAD STATED "NOT GUILTY" AT THE ARRAIGNMENT. COLEMAN V. ALABAMA, 399 U.S. 1, 7 (1970)(RIGHT TO COUNSEL ATTACHES AT ARRAIGNMENT

BECAUSE ARRAIGNMENT IS "CRITICAL STAGE" OF THE CRIMINAL PROCESS) IN FACT, WHAT WAS THE DEFENDANT'S DEFENSE?

THE SIXTH AMENDMENT RIGHT TO COUNSEL IS "OFFENSE -SPECIFIC." MCNEIL V. WISCONSIN, 501 U.S. 171, 175 (1991)

UNDER SOME CIRCUMSTANCES THE ABSENCE OF COUNSEL AFTER THE INITIATION OF ADVERSARIAL PROCEEDINGS MAY BE HARMLESS ERROR THAT DOES NOT REQUIRE REVERSAL OF THE CONVICTION. COLEMAN V. ALABAMA, 399 U.S. 1, 10-11 (1970)

IF THE SIXTH AMENDMENT **VIOLATION** "PERVADES THE ENTIRE PROCEEDINGS" THEN HARMLESS ERROR ANALYSIS IS INAPPLICABLE.

AND THE VIOLATIONS ARE ENOUGH TO OVERTURN THE CONVICTION REGARDLESS OF THE SEVERITY OF THE RESULTS. IN ADDITION, THE COURTS HAVE UNIFORMLY FOUND CONSTITUTIONAL ERROR WITHOUT ANY SHOWING OF PREJUDICE WHEN COUNSEL WAS EITHER TOTALLY ABSENT,

OR PREVENTED FROM ASSISTING THE ACCUSED, OR THE ACCUSED PREVENTED FROM ASSISTING HIS COUNSEL, DURING A CRITICAL STAGE OF THE PROCEEDING. UNITED STATES V. CRONIC, 466 U.S. 648, 659 [n.25] (1984)

THE DEFENDANT IN THIS CASE HAS WAIVED NOTHING IN REGARDS TO PROFESSIONAL ADVOCATE REPRESENTATION FROM ARRAIGNMENT TO DIRECT APPEAL. UNITED STATES V. SANCHEZ, 354 F.3D 70, 83 (1ST CIR. 2004) AT NO TIME DID THE DEFENDANT EXPRESS THE WISH TO REPRESENT HIMSELF, FROM ARRAIGNMENT TO DIRECT APPEAL. BROOKS V. MCCAUGHTRY, 380 F.3D 1009, 1013 (2004); IOWA V. TOVAR, 541 U.S. 77, 92 (2004) AND... THERE WAS NEVER AN "IMPLIED WAIVER." BREWER V. WILLIAMS, 430 U.S. 387, 404 (1977)

THE SIXTH AMENDMENT GUARANTEES[1] THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL IN CRIMINAL PROSECUTIONS. YARBOROUGH V. GENTRY, 540 U.S. 1, 5 (2003)(PER CURIAM)

---

1 "GUARANTEES." A DECLARATION THAT ONE WILL OR WILL NOT DO A CERTAIN THING: ASSURANCE, COVENANT, ENGAGEMENT, GUARANTY, PLEDGE, PROMISE, SOLEMN WORD, VOW, WARRANT, WORD OF HONOR. (ROGET'S II THE NEW THESAURUS, THIRD EDITION. 2003)

TO OBTAIN REVERSAL OF A CONVICTION, THE DEFENDANT MUST PROVE BY A PREPONDERANCE OF EVIDENCE THAT:

1) COUNSEL'S PERFORMANCE FELL BELOW AN OBJECTIVE STANDARD OF REASONABLENESS:

2) COUNSEL'S DEFICIENT PERFORMANCE PREJUDICED THE DEFENDANT, RESULTING IN AN UNRELIABLE OR FUNDAMENTALLY UNFAIR OUTCOME IN THE PROCEEDING.

STRICKLAND V. WASHINGTON, 466 U.S. 668, 687-692 (1984)

IN DECIDING WHETHER COUNSEL'S PERFORMANCE WAS INEFFECTIVE, A COURT MUST CONSIDER THE TOTALITY OF THE CIRCUMSTANCES. STRICKLAND, 446 U.S. at 690.

ATTORNEY JOHN YUNITS "STIPULATED" WITHOUT THE DEFENDANT'S KNOWLEDGE THAT AN AGGRAVATED BURGLARY AND AN AGGRAVATED RAPE HAPPENED TO THE COMPLAINING WITNESS. (AFFIDAVIT, [RA 16])

IN THE MOTION COURT'S MEMORANDUM OF DECISION AND ORDER... ISSUED BY THE COURT, BROWN, J., ON

ON FEBRUARY 7, 2018, THE COURT ACKNOWLEDGED THE DEFENDANT "...HAS FILED AN AFFIDAVIT IN SUPPORT OF HIS MOTION AVERRING THAT HE WAS NEVER INFORMED BY COUNSEL ABOUT THE PRETRIAL CONFERENCE OR THAT HE CONCEDED THE CRIMES CHARGED IN THE INDICTMENTS, 84018-20, RELIEVING THE COMMONWEALTH OF ITS BURDEN TO PROVE THE CRIMES OCCURRED, BEYOND A REASONABLE DOUBT." [MEMO, p. 5] THE COURT WAIVED HIS CLAIMS. [MEMO, p. 7], EXCEPT NO COURT HAS ADDRESSED THE ISSUE UNTIL COMMONWEALTH V. DEPASQUALE, 91 MASS.APP.CT. 1102 (2017) AND COMMONWEALTH V. HISER, 91 MASS.APP.CT. 1119 (2017) AND BOTH PANELS GAVE DIFFERENT REASONS FOR NOT GRANTING RELIEF ON THE ISSUE.

HOW ABOUT JUDGE BROWN'S RULING THAT "DUTCHER LACKED ANY AFFIDAVIT FROM TRIAL COUNSEL ON THAT ISSUE;" [MEMO, p.9] AN AFFIDAVIT BY TRIAL COUNSEL IS NOT REQUIRED BY RULE 30. "THE RULES OF COURT HAVE THE FORCE OF LAW." COMMONWEALTH V. BROWN, 395 MASS. 604 (1985)

IN FACT, THE DEFENDANT'S AFFIDAVIT IS SWORN TESTIMONY TO SUPPORT HIS CLAIMS, UNCHALLENGED BY THE DISTRICT ATTORNEY OR THE COURT.

ALL THE ARGUMENTS READ BY THE COURT, BROWN, J., ON THE ISSUES OF INEFFECTIVE ASSISTANCE OF COUNSEL, BOTH AT TRIAL AND ON APPEAL, ARE RULED "WAIVED."

DEAR MR. DUTCHER:

YOU HAVE PROVEN BY A PREPONDERANCE OF THE EVIDENCE THAT YOU ARE AN INNOCENT MAN. THAT DOES NOT COUNT IN THIS STATE. WHAT COUNTS IS WHETHER THE COURT IS WILLING TO BE FAIR FOR POST-CONVICTION VINDICATIONS FOLLOWING A JURY'S VERDICT OF GUILTY. IN FACT, WE ARE NOT.

/s/____________________

THE COURT

## CONCLUSION

FOR THE REASONS STATED ABOVE, IN FACT AND LAW, THE DEFENDANT'S CONVICTION MUST BE REVERSED AND GRANTED A NEW TRIAL.

APRIL 19, 2018

/s/ John E. Dutcher

JOHN E. DUTCHER, PRO SE
BOX 43, NORFOLK MA 02056

3/20/17

143

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH SS. SUPERIOR COURT

No. 84018-19
84057-58

Commonwealth v. John E. Dutcher,

COMMONWEALTH OF MASSACHUSETTS SUPERIOR COURT PLYMOUTH COUNTY FILED MAR 2 0 2017 Clerk of Courts

MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE - SUPERIOR COURT RULE 61A

Introduction

The Appeals Court, McGuire, J., allowed the defendant's motion to stay appeal February 8, 2017 and granted leave to file and the trial court leave to consider another motion for new trial. See, [Exhibit 1]

The defendant hereby moves this Honorable Court, pursuant to Superior Court Rule 61A(A)(B)(C), to grant him post-conviction relief as, according to law upon this Court's action, the defendant has completed his 1987 sentence after being charged and convicted of Burglary; unarmed, in violation of G.L. c. 266 §15, which carries a maximum sentence of 20 years.

Commonwealth to file response within 90 days(Kelley Brown,J);
May 8, 2017 Asst Clerk

cc DA/s/DD
JD
5/10/17

CR110

5. Because I was not at the Pre-Trial Conference I did not hear all the facts of the crimes as understood by the Commonwealth and did not get any opportunity to dispute those facts where they were untrue.

6. If I was at the PreTrial Conference I would have personally told the prosecutor that on February 19, 1987 I stayed overnight at my brother's house.

7. I was not allowed to read the PreTrial Conference Report, nor did I sign my assent to it.

8. At the time of trial, or at any time, my attorney, John Yunits, did not tell me that the charged aggravated rape was an element of the crime of Burglary, or that Burglary was an element of the crime of aggravated rape.

9. My attorney did not explain to me about any lesser included offenses or that the Court was required to instruct the jury, then after its decision, dismiss the lesser included offense.

10. During the instructions to the jury I heard the Judge tell the jurors that I was charged under G.L. c. 266 §14 and §15 and that it did not matter whether I was armed or unarmed.

11. I heard the Judge tell the jury that the ~~Burglary was the prime charge in the case.~~

12. I heard the Judge tell the jury that I had conceded the crimes being committed. It apparently was my attorney who had done the conceding and not me. I conceded nothing.

13. Because I was not at the Pre-Trial Conference and the judge did not ask me if I had conceded the crimes were committed, I know now my constitutional rights were violated and I was not allowed a fair trial.

14. During the trial I heard the complaining witness testify that she had thrown up after the perpetrator forced her to perform oral sex.

15. My attorney told me the Commonwealth did not test any of the clothing and that they had lost this clothing in the Clerk's Office. I then asked Mr. Yunits what he intended to do about it and he asked me "What can I do, they lost the stuff."

16. I learned from attending the Law library that a new law had passed which allowed testing on clothing for blood, semen, and any other biological material, which I could not utilize to prove my innocence.

17. I am actually innocent of all three of the charges against me lodged by the Commonwealth in 1987, and have been unable to prove that I am innocent where the burden is now on me.

18. Sometime in the Spring of 1987 Detective LaGarde summoned me into the Brockton Police Department and asked for an opportunity to take my picture. He did not tell me I was a suspect in a crime, so I let him take the picture, expecially as he told me this is done all the time.

19. While at trial I heard Detective LaGarde state that he had a meeting with the complaining witness at her home, just him and her. I told my attorney the police had taken my picture and must have told the complaining witness that I was the perpetrator. I did not think this was a fair process.

20. I testified under oath that on the night of February 19, 1987 I was staying overnight at my brother Dale's house in Brockton. My lawyer never called in my brother to confirm my alibi and because I was not at the PreTrial Conference my attorney did not notify the prosecutor of this alibi and because my brother was not asked to testify to confirm my whereabouts, I'm sure the jury did not believe me.

21. I asked my attorney if the Commonwealth had found any fingerprints in the complaining witness's home, or any other evidence. Mr. Yunits stated that as far as he knew the Commonwealth did not even send a CSI team into that home.

22. I told my appellate attorney that the Commonwealth, according to my trial attorney, had not conducted any crime scene investigation on the place, but he did not bring this fact up on direct appeal.

23. At trial I heard my attorney ask the Commonwealth's witness Sharon Chace if she hated me, and she replied that she had good reason to hate me. I notice that the four jurors in the front immediately turned and looked at me with what I called a very hard look.

24. When the prosecutor made his closing arguments I heard him say what a good, strong witness she was in making the identification against me. I knew I was innocent and he was wrong, and I nudged my attorney, but he did not say anything.

25. My appellate attorney never discussed which issue(s) he was going to raise on direct appeal, but I told him there were a lot more he could raise. He told me that's all he had time for with what he raised.



26. When I plead guilty to Indictments 84057 and 84058 it was with the implicit understanding that the sentences would run concurrent with 84018-19.

27. If I had known that the Court was required to dismiss the lesser included offense of aggravated rape because it was an element of the crime of aggravated burglary, I would have accepted the sentence of 20 years only.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS THIRD DAY OF MARCH, TWO THOUSAND SEVENTEEN,

/s/ [signature]
John D. Dutcher, Pro Se
Box 43,
Norfolk, MA 02056

# Commonwealth of Massachusetts

Appeals Court for the Commonwealth

At Boston

In the case no. 18-P-308

COMMONWEALTH

vs.

JOHN E. DUTCHER.

Pending in the Superior

Court for the County of Plymouth

Ordered, that the following entry be made on the docket:

Order dated February 17, 2018, denying defendant's motion for new trial affirmed.

By the Court,

Joseph F. Stanton, Clerk

Date August 30, 2019.

NOTICE: Summary decisions issued by the Appeals Court pursuant to its rule 1:28, as amended by 73 Mass. App. Ct. 1001 (2009), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

18-P-308

COMMONWEALTH

vs.

JOHN E. DUTCHER.

MEMORANDUM AND ORDER PURSUANT TO RULE 1:28

The defendant appeals from the denial of his latest motion for a new trial.[1] He argues that (1) there was structural error

---

[1] After a 1989 jury trial, the defendant was found guilty of aggravated rape, G. L. c. 265, § 22 (a), aggravated burglary, G. L. c. 266, § 14, and assault and battery, G. L. c. 265, § 13A. His convictions were affirmed by this court. Commonwealth v. Dutcher, 32 Mass. App. Ct. 1108 (1992). The order denying his first motion for a new trial was affirmed by this court. Commonwealth v. Dutcher, 81 Mass. App. Ct. 1115 (2012). There, he argued that the eyewitness identification at trial was unreliable and also pursued a claim for postconviction discovery of scientific evidence. In his second motion for a new trial, which was also denied, the defendant raised other motions for postconviction relief, including a motion for a corrected mittimus on another case and a motion to vacate and resentence in this case, arguing that the charges were duplicative. This court rejected those arguments. Commonwealth v. Dutcher, 90 Mass. App. Ct. 1115 (2016). The defendant filed another motion for a new trial, which was also denied. On appeal from the denial of that motion, the defendant argued "that he was entitled to a new trial on multiple grounds: a police officer falsely testified before the grand jury, the Commonwealth failed to provide exculpatory evidence at trial, his trial counsel and appellate counsel were constitutionally ineffective, and the trial judge failed to provide the jury with

because he did not attend a pretrial conference; (2) his

conviction for aggravated rape should have been dismissed as a

lesser included offense of aggravated burglary; (3) the

Commonwealth was somehow relieved of its burden to prove every

element of the crimes charged because his counsel conceded at

trial that the crimes had occurred, and pursued only a defense

of misidentification; (4) the government lost key evidence,

denying him due process on direct appeal and collateral review;

(5) the victim's "one-on-one" identification violated his rights

under the Fourteenth Amendment to the United States

Constitution; (6) he was unfairly denied an alibi instruction in

the trial judge's final instructions to the jury due to his

counsel's failure to notify the Commonwealth of his alibi

defense; (7) the government failed to investigate the crime

scene properly, depriving him of a third-party defense; (8)

certain testimony he describes as "bad acts" testimony violated

a ruling on a motion in limine and created a miscarriage of

justice; (9) the prosecutor improperly vouched for the victim's

---

instructions on fresh complaint testimony. Discerning no abuse
of discretion or other error," we affirmed. Commonwealth v.
Dutcher, 92 Mass. App. Ct. 1129 (2018). That appeal was pending
in this court when the motion judge entered her findings and the
defendant filed his brief in this matter.
    In addition, the defendant filed a motion challenging his
guilty plea on an unrelated case and his commitment as a
sexually dangerous person. The denial of those motions also was
affirmed by this court. Commonwealth v. Dutcher, 69 Mass. App
Ct. 1104 (2007).

credibility; and (10) he was denied effective assistance of counsel at trial and on appeal.   We affirm, essentially for the reasons well explained by the motion judge.

Discussion.   Because this appeal originates from the denial of a motion for new trial, "we 'examine the motion judge's conclusion only to determine whether there has been a significant error of law or other abuse of discretion.'" Commonwealth v. Brescia, 471 Mass. 381, 387 (2015), quoting Commonwealth v. Wright, 447 Mass. 447, 461 (2014).   We see neither.   Each of the claims in the defendant's motion either has been waived for failure to raise it at trial, on direct appeal, or in a prior motion for new trial, or else it is directly estopped as it previously was adjudicated on its merits.   See Mass. R. Crim. P. 30 (b) and (c) (2), as appearing in 435 Mass. 1501 (2001); Commonwealth v. Ellis, 475 Mass. 459, 476 (2016); Commonwealth v. Morganti, 467 Mass. 96, 101-102, cert. denied, 135 S. Ct. 356 (2014); Commonwealth v. Chase, 433 Mass. 293, 297 (2001).

"If a motion for a new trial rests on an unpreserved claim of nonconstitutional error, a new trial should be granted only if the defendant demonstrates a 'substantial risk of a miscarriage of justice,' Commonwealth v. Childs, 445 Mass. 529, 530 (2005), namely, 'a serious doubt whether the result of the trial might have been different had the error not been made.'

Commonwealth v. Randolph, 438 Mass. 290, 297 (2012)." Brescia, 471 Mass. at 389.

"The rule of waiver 'applies equally to constitutional claims which could have been raised, but were not raised' on direct appeal or in a prior motion for a new trial." Commonwealth v. Roberts, 472 Mass. 355, 359 (2015), quoting Commonwealth v. Watson, 409 Mass. 110, 112 (1991). "A defendant generally may not raise any ground in a motion for a new trial that could have been, but was not, raised at trial or on direct appeal. Commonwealth v. Pisa, 384 Mass. 362, 366 (1981), and cases cited. This requirement ensures the finality of convictions by eliminating piecemeal litigation, which would 'unfairly consume public resources without any corresponding benefit to the administration of justice.' Id. It is neither unreasonable nor unduly burdensome to require a defendant to advance his contentions, even those with constitutional ramifications, at the first opportune time. Murch v. Mottram, 409 U.S. 41, 45 (1972). 'We cannot retry every criminal [case] on the basis of what might have been.' Commonwealth v. Stout, 356 Mass. 237, 243 (1969). Thus, even when a claim is one of constitutional dimension, a defendant who has had a fair opportunity to raise it may not 'belatedly invoke that right to reopen a proceeding that has already run its course.' Commonwealth v. Amirault, 424 Mass. 618, 639 (1997)." Chase,

433 Mass. at 297. See Morganti, 467 Mass. at 101-102 ("structural error is subject to the doctrine of waiver" [quotation omitted]).

Further, under the principle of direct estoppel, arguments that previously were raised, and adjudicated, cannot be reheard. See Ellis, 475 Mass. at 475, quoting Commonwealth v. Rodriguez, 443 Mass. 707, 709-710 (2005) ("where a defendant 'raises no new factual or legal issue' in a motion under Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 [2001], and simply seeks to relitigate a motion that was previously denied by the motion judge and rejected on appeal, 'principles of direct estoppel operate as a bar to the defendant's attempt in [the] rule 30 [b] motion to relitigate issues'").

A. Waived claims. 1. Failure to attend pretrial conference. The defendant contends his failure to attend a pretrial conference on July 6, 1987, was structural error that violated his due process rights and automatically requires a new trial. He argues also that his counsel was ineffective because the defendant was not made aware of the conference. Neither claim was raised on direct appeal nor in prior motions for new trial. As a result, those claims are waived. Further, we see no risk of a miscarriage of justice from the defendant's absence at the pretrial conference. There is no offer of proof to substantiate his claim that he was "excluded" from the

conference. Nor are we persuaded that his presence at the conference would have altered the outcome of the trial.

2. Concession by counsel at trial that the crimes occurred. The defendant argues that defense counsel was ineffective when he conceded that the burglary and rape had occurred. This argument also is waived. Moreover, the motion judge determined that defense counsel "vigorously argued" misidentification, the defendant's theory at trial. We cannot say that that strategy was unreasonable at the time, or that the concession reduced the Commonwealth's burden to prove that the defendant in fact committed the crimes. Further, the trial judge specifically instructed the jury that the Commonwealth must prove, beyond a reasonable doubt, that the defendant committed the crimes charged. The defendant has given us no reason to believe that, had trial counsel not conceded that the crimes occurred, the outcome would have been different.

3. Deoxyribonucleic acid (DNA) testing. The defendant also claims that his due process rights were violated because the Commonwealth lost key evidence -- DNA on the victim's clothes -- which he asserts could have exonerated him. Because this is the first time this issue has been raised, it too is waived. In addition, a laboratory report from 1987 stated that no seminal fluid was detected on the victim's shirt or underwear. Therefore, we see no reason to conclude that "the

result of the trial might have been different had the [alleged] error not been made." Brescia, 471 Mass. at 389.

4. Alibi instruction. The defendant's contention at trial was that he was at his brother's house during the burglary and rape. He now argues, for the first time, that trial counsel was ineffective for failing to request an alibi instruction. Again, this claim is waived. See Commonwealth v. Phinney, 446 Mass. 155, 167-168 (2006) ("defendant's claim of ineffective assistance of counsel [concerning failure to object to jury instructions] was not raised in his direct appeal and therefore was waived, subjecting it to review solely for a substantial risk of a miscarriage of justice on appeal"). See also Commonwealth v. Robinson, 480 Mass. 146, 152 (2018) ("Cases noting that a defendant also failed to raise the claim in his or her first motion for a new trial or on direct appeal only serve to emphasize the egregiousness of the defendant's delay in raising the claim").

Further, "it cannot be counted a mistake to omit the [alibi] charge, if it is otherwise made clear that the burden of showing that the defendant was present at the time and place, and thus capable of committing the crime, remains on the Commonwealth." Commonwealth v. Knight, 437 Mass. 487, 499 (2002), quoting Commonwealth v. Medina, 380 Mass. 565, 579 (1980), S.C., 430 Mass. 800 (2000).

5. Prior bad act testimony. The defendant argues for the first time that he was prejudiced by the admission of what he describes as prior bad act testimony, from a witness (other than the victim), who testified that she had "good reason" to hate him. The argument is waived. Further, we see no risk of a miscarriage of justice because the witness's admitted bias was used by trial counsel on cross-examination to undermine her credibility. Arguably, the statement resulted in a tactical trial advantage for the defendant, and we are not persuaded that the statement's omission would have changed the trial's outcome.

6. Prosecutor's vouching for victim's credibility. In closing argument, the prosecutor argued that the victim should be believed because she never wavered in her identification of the defendant and she was not shaken on cross-examination. The defendant contends, again for the first time, that these statements constituted improper vouching. This claim is waived.

In addition, we see no error. "A prosecutor engages in improper vouching if he or she 'expresses a personal belief in the credibility of a witness, or indicates that he or she has knowledge independent of the evidence before the jury.'" Commonwealth v. Martinez, 476 Mass. 186, 199 (2017), quoting Commonwealth v. Wilson, 427 Mass. 336, 350 (1998). Here, however, the prosecutor's statements reasonably represented the evidence at trial. See Martinez, supra ("A prosecutor properly

may comment on and urge the jury to draw inferences from the trial evidence, Commonwealth v. Chavis, 415 Mass. 703, 713 [1993], and may state logical reasons based on inferences from the evidence why a witness's testimony should be believed").

7. Reasonable doubt instruction. The defendant argues that the reasonable doubt instruction was erroneous because it included the term "moral certainty." This argument, too, is waived. In addition, "the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." Commonwealth v. Veiovis, 477 Mass. 472, 489 (2017). We agree with the motion judge that, in 1989, when the defendant was tried, the Webster charge was the "gold standard" for instructions on reasonable doubt. Commonwealth v. Webster, 5 Cush. 295, 320 (1850). See Commonwealth v. Russell, 470 Mass. 464, 477 (2015) (setting out for use "going forward" "uniform instruction on proof beyond a reasonable doubt that uses more modern language, but preserves the power, efficacy, and essence of the Webster charge"). We see no error.

B. Directly estopped claims. 1. Lesser included offenses. The defendant argues again that aggravated rape is a lesser included offense of aggravated burglary, and that therefore he could not be sentenced on both charges. This

argument already has been rejected by this court. Commonwealth v. Dutcher, 90 Mass. App. Ct. 1115 (2016). See note 1, supra.

2. Unnecessarily suggestive photographic array. The defendant also argues that the victim's identification of him as her attacker was unnecessarily suggestive and should have been suppressed, and that trial counsel "was ineffective for failing to move the court for a suppression hearing before trial." As a preliminary matter, we note that defense counsel apparently did, in fact, move to suppress the identification and that an evidentiary hearing was conducted.

In addition, in an earlier motion for a new trial, the defendant argued that the victim's identification was unreliable because she initially selected a different individual from a photographic array. Commonwealth v. Dutcher, 81 Mass. App. Ct. 1115 (2012). For this reason, the motion judge concluded the defendant was precluded from making this argument. We agree and, even if he were not so precluded, there was no error.

It appears that the defendant's present argument is that "[t]here were only two persons present at this 'identification event.'" That is, because only one police officer was present to show the victim the array, the array was "one-on-one" and therefore unnecessarily suggestive. This is not what the cases mean by a "one-on-one" identification process. Compare Commonwealth v. Crayton, 470 Mass. 228, 235 (2014) ("We have

applied the 'unnecessarily suggestive' standard to showup

identifications, where the police show a suspect to an

eyewitness individually rather than as part of a lineup or

photographic array").  See Commonwealth v. Silva-Santiago, 453

Mass. 782, 797 (2009).  Furthermore, before the victim was

provided with the eight-picture array, she had examined over

1,000 pictures of white males.  Even having in mind recent case

law on eyewitness identification, which, for the most part would

not apply to the defendant, we see no error and certainly no

risk of a miscarriage of justice.

3.  Bowden instruction.  The defendant now argues that the

trial judge failed to give a requested Bowden instruction.[2]

Commonwealth v. Bowden, 379 Mass. 472, 485-486 (1980).  This

issue, too, was addressed and rejected previously.  Dutcher, 81

Mass. App. Ct. 1115.  The defendant is precluded from raising

the issue again.  In any event, whether to provide a Bowden

instruction is discretionary with the trial judge, so long as

the trial judge does not foreclose the jury from considering the

details of the police investigation.  See Commonwealth v. Issa,

466 Mass. 1, 21 n.26 (2013), quoting Commonwealth v. Perez, 460

Mass. 683, 692 (2011) ("We have often stated that, so long as

the judge does not 'remove issues of inadequacy of a police

---

[2] We note that there was no objection at trial.

investigation or lack of evidence from the jury's consideration . . . a judge is not required to instruct on the claimed inadequacy of a police investigation'").

We see no error or abuse of discretion in the motion judge's thorough findings and conclusions.[3]

Order dated February 17, 2018, denying defendant's motion for new trial affirmed.

By the Court (Vuono, Hanlon & Shin, JJ.[4]),

Joseph F. Stanton

Clerk

Entered: August 30, 2019.

---

[3] "To the extent we have not explicitly discussed them, we have carefully considered the defendant's remaining arguments, and we find them to be without merit." Commonwealth v. Silva, 93 Mass. App. Ct. 609, 619 n.8 (2018).

[4] The panelists are listed in order of seniority.